JOHN S. MELIN, Appellant, v. ALBERT E. MELIN et al., Appellees.

**PARTITION:** Collusion in Sale. Bidders at referee's sale in parti-
1    tion may band themselves together for a joint purchase of the
     property, so long as nothing is done to interfere with free
     competition in the bidding.

**RECEIVERS:** Validity of Sale to Receiver. A receiver may pur-
2    chase, at a referee's sale in partition, the property of which
     he is receiver, when his position as receiver has brought to him
     no knowledge not readily available to all interested parties, and
     there is no opportunity for conflict between his individual in-
     terest and the interest of such parties.

*Appeal from Webster District Court.*—R. M. WRIGHT, Judge.

JULY 6, 1920.

APPEAL from an order confirming the sale of land by referee in partition.—*Affirmed.*

*E. H. Johnson* and *E. Luther Melin,* for appellant.

*Price & Burnquist,* for appellees.

LADD, J.—I. Upon the death of A. L. Melin, title to his farm of 200 acres passed to his five sons and one daughter. The claim of the latter thereto, by virtue of an alleged contract with decedent, was finally rejected in *Melin v. Melin,* (Iowa) 171 N. W. 20 (not officially reported). Thereafter, sale of the land was decreed, and partition of the proceeds. F. A. W. Johnson was appointed referee, and, after qualifying, sold the land at auction, June 21st, at $236 an acre. The referee filed his report of a sale to

A. J. Challgren, to which was attached the contract entered into by the referee and the purchaser, from which it appeared that $2,000 was paid down, $5,000 was to be paid on October 1, 1919, and the remainder on February 1, 1920. The bid of Challgren was no more than an offer or proposition to purchase, until it had been approved by the court. *Harney v. Crowley,* 184 Iowa 1101. To the approval of the report, Eben L. Melin, one of the six children of decedent, and owner of a one-sixth interest in the farm, interposed objections, in substance, as follows: (1) That the proposed purchaser was receiver, in possession of the farm to collect rents and otherwise manage the same, and disqualified, owing to such fiduciary relation, to purchase at the sale; (2) that there were collusive agreements to depress the price in bidding; and (3) that the price for which the farm had been sold was inadequate.

The evidence failed to establish such inadequacy of price as to warrant the court in interfering with the sale on that ground. Nor was the evidence sufficient to warrant the inference that there had been any improper competition. Three persons attending the sale appear to have entered into an agreement to share in paying for the land, and bid with that understanding. It also appears that four others had arranged with Challgren, prior to the day of the sale, to do likewise, and that Challgren was to purchase the same, and the five share in such purchase. But in neither instance was there any arrangement to depress the price to be paid, or to interfere in any manner with the auction. Neither group was shown to have had any purpose of interposing obstacles to the freest competition, nor to have designed obtaining the property otherwise than fairly. Aside from these groups, there were several individual bidders and others present, and the sale, for all that appears, was open, and conducted in all respects in lawful manner. The law does not prohibit men from associating themselves together, with a view of pur-

1. PARTITION: collusion in sale.

chasing property at public sales, provided this does not involve interference with that free competition contemplated for all judicial sales. We have been referred to no decision to the contrary, and there is every reason for allowing proposed purchasers to make arrangements for themselves, for the purchase price and disposition of the property, if bought.

II. At about the time the sister interposed her claim that she was the owner of the entire farm, by virtue of an alleged contract with decedent, Challgren was appointed receiver, to rent the farm, collect rents, and generally to manage the same, pending the litigation so initiated, and the final disposition of the land. He qualified as such, and was acting as receiver at the time of bidding at the referee's sale, and entered into the contract of purchase in consequence of being the highest bidder. It is contended that, because of such relation, he was precluded from bidding or becoming a purchaser at the referee's sale. Had the sale been by him, as receiver, it would have been voidable, and could have been confirmed over the objection of anyone interested in the property. As to whether a receiver in a situation like that of Challgren may become a purchaser at the referee's sale, the decisions are in hopeless conflict. On the one hand, it is said that the receiver is in possession for the benefit of all those interested in the property, and that his relation is that of trustee, and that he owes the duty of acting in entire good faith, and in the interest of the *cestuis que trustent*. Nothing is better settled than that a trustee may not purchase at a sale conducted by himself; and the same rule applies to receivers. The author, in High on Receivers (4th Ed.), Section 193, lays down the rule that:

"A receiver is regarded as occupying a fiduciary relation, in the sense that he will not be allowed to purchase, for his own benefit, property connected with or forming a part of the subject-matter of his receivership, or in his

2. RECEIVERS: validity of sale to receiver.

possession in that capacity. The courts will not permit him, any more than any other trustee, to subject himself to the temptation arising from a conflict between the interest of a purchaser and the duty of a trustee. And the rule has its foundation in grounds of public policy, and in the peculiar relation sustained by a receiver to the fund or estate in his custody, which resembles in this respect that of a solicitor, trustee, or any other fiduciary relation of a like nature, where the same rule of equity prevails. Unless, therefore, it clearly appears that it would be for the benefit of the parties in interest to hold the receiver to his purchase, he will not be permitted to derive any benefit from a purchase made by himself of property pertaining to his receivership; and whatever purchase he may make will be held to be for the benefit of the real parties interested, whose interests he as receiver represents, and his purchase will be held voidable at their election. And a court of equity will not ordinarily permit a receiver to become a bidder at a sale of lands of which he had had the previous management as receiver, it being regarded as of great importance to the interests of suitors, and to the faithful discharge of their duties by receivers, that they should be beyond the reach of all temptation to compromise those duties."

See, also, Beach on Receivers, Section 282; Alderson on Receivers, Section 238. It is to be observed that this text does not limit the application to sales conducted by the receiver himself. The principle, as thus laid down, is said to be quite as applicable where the sale is by the receiver of premises in his possession, and made by the referee in partition.

In *Anderson v. Anderson,* 9 Ir. Ch. (1846-47) 23, the receiver sought permission to bid at the sale, alleging that he had made advances in payment of head rent of the premises, and that no other was disposed to bid, and that there was considerable loss in operating the mills. The Master of the Rolls, in denying the application, entertained "a strong opinion of the impolicy, upon obvious principles, of

permitting a receiver to bid for the lands of which he has previously had the management. I do not find that this court has ever been in the practice of so doing; on the contrary, the practice has been not to suffer the receiver to bid. It is of great importance to the interests of suitors, and to the due and faithful discharge of their duties by receivers of this court, that they should be beyond the reach of all influence or temptation to neglect or compromise those duties."

The application was denied, unless there was a showing of peculiar circumstances, justifying the departure from what His Honor conceived "should be the general rule of the court,—namely, not to permit the receiver to bid at the sale of the estate." See *Eyre v. M'Donnell*, 15 Ir. Ch. (1863-65) 534, where the sale of an annuity charged on certain lands to a receiver in possession thereof, was set aside, on application of the vendor's representative.

*Nugent v. Nugent*, 77 L. J. Ch. (N. S.) 271 (1 British Ruling Cases 405), is directly in point. There, in 1905, the defendant in a partition action, and part owner, was appointed receiver of the rents and profits of a house. Later, a mortgagee obtained an order giving her liberty, as such, to take possession and exercise the power of sale by public auction. Though not taking possession, she put the house up for sale at auction, and, in January, 1906, the defendant, without leave of court, instructed an agent to bid at the auction and purchase the property. On hearing, the trial court held that the receiver could not purchase the property without the sanction of the court, even though the sale was made by the mortgagee, with the leave. On appeal, the ruling was affirmed. The Master of the Rolls, after remarking that "the court, in dealing with this class of cases, does not proceed upon the footing that there has been fraud or improper concealment, or any special advantage taken by the receiver," but that it proceeds upon the general rule that, in cases of this kind, the purchase ought not to be allowed at all, because it is a dangerous thing to allow, as in most cases it is impossible to ascer-

tain whether the receiver has or has not taken undue advantage of his position, proceeded:

"What is the position of the receiver towards the beneficiaries in this case? Plainly, a fiduciary one. That cannot be disputed. It makes no difference whatever that the receiver was herself one of the tenants in common. In that character alone, she would not have filled a fiduciary position; but a receiver must be in a fiduciary position to all the tenants in common, and it makes not a farthing difference whether the receiver was herself one of the owners. Then on what ground can this case be taken out of the usual rule? I fail to see any ground. The receiver, being in this fiduciary position, and having special opportunities of knowing the rentals of the property and the other circumstances, was exactly in that position which, in my opinion, brings the case very plainly and strongly within the rule of the court that a person in a fiduciary position, having special means of knowledge, ought not to be allowed to buy or to bid for the property, without the leave of the court. It is said, and there is a great deal of plausibility in the argument, that this, after all, was merely a house in Brighton, of which there would be no special knowledge. I think we ought to decline to go into that, because, when once we arrive at this point, that the doctrine of the court does not depend on the fact of undue knowledge, but merely on the probability of it, and that the person is in a position where duty and interest are in conflict, we ought not to consider whether, under the special circumstances of the particular property, there is any great probability of fraud."

Other justices concurred, Buckley, L. J., saying:

"A person standing in a fiduciary relation cannot be allowed to put himself in a position in which his interest and his duty may conflict. If he does so, it is not necessary to show that he acted contrary to his duty. * * * When the mortgagee is selling, the mortgagor may, no doubt, owe no duty to the mortgagee to assist him in the

sale; but, if he knows something that may improve the price, it would be his interest to put it forward. The receiver, who stands in a fiduciary relation to the mortgagor, or the parties to the action constituting the mortgagor * * * owes to those parties the duty to do what is reasonably necessary to assist the sale. If, for instance, the mortgagee comes to the receiver and asks for information, the receiver owes to the mortgagor the duty of giving true information to the mortgagee, so as to assist the sale. Sir Michael O'Loghlen, M. R., in *Alven v. Bond* [(1841) Flan. & K. 196], puts this case, which, it seems to me, is strictly in point. He says [Flan. & K. 213, 214], it would be very dangerous to allow a receiver who may be 'employed in the preparation of the rental to be used at the sale (which everyone knows to be one of the most important documents used on such an occasion) to become the purchaser of the estate, without the sanction or knowledge of the court. * * * Very great powers are given to, and much confidence placed in, this officer, who is placed in a situation which would enable him, if inclined to act dishonestly, by reducing the rental or lettings under the court, or otherwise, to bring to a sale under very disadvantageous terms, the property confided to his care, and thus become the purchaser at an undervalue.' Suppose the mortgagee had come to the receiver and said, 'For the purposes of my sale, I want to know what the rents are,' the receiver would have owed to the parties to the suit the duty of telling truly what the rents were, and of not undervaluing them; but if he were going to buy, it would be his interest to say they were less than, in point of fact, they were; and if that is so, it is obvious that it is a case in which interest and duty would conflict. Under those circumstances, it seems to me that, upon principles common to all this class of cases, the receiver cannot buy without the leave of the court."

In *Cook v. Martin*, 75 Ark. 40 (5 Am. & Eng. Ann. Cas. 204), a receiver was appointed, at the instance of attach-

ing creditors, to take charge, collect rents, and pay taxes, and do other things necessary for the preservation of the property, and he purchased the property for his wife, at a foreclosure sale of a mortgagee; and the court, in holding that he acted in violation of his trust as receiver, and directing that she be reimbursed for money paid out, and be deemed to hold title as trustee for the creditors, said:

"While a receiver is an officer of the court, he is also a quasi trustee, and occupies a fiduciary relation towards the parties to the action in which he is appointed; and both by reason of the fact that he holds the property as an officer of the court, and also occupies such fiduciary relation, he will not be permitted to deal with the trust estate for his own benefit or advantage. There is no reason why a distinction should be made between a receiver and other persons occupying a relation of that kind, and the decisions make none. It has often been held that a receiver occupies a fiduciary relation to the parties to the action, and is trustee for all of them who are interested in the property intrusted to his charge by the court, and he cannot deal with or purchase such property for his individual benefit, or for that of any third party. 'It is hardly possible,' said the court in *Jewett v. Miller,* speaking of an attempted purchase by a receiver, 'to state the rule of equity too broadly or too strongly. It will not permit a trustee to subject himself to the temptation which arises out of the conflict between the interests of a purchaser and the duty of a trustee.   *   *   *   The rule is entirely independent of the question whether, in point of fact, any fraud has intervened. It is to avoid the necessity of any such inquiry, in which justice might be balked, that the rule takes so general a form.' "

See, also, *Herrick v. Miller,* 123 Ind. 304 (24 N. E. 111); *Donahue v. Quackenbush,* 62 Minn. 132 (64 N. W. 141); same case, 75 Minn. 43 (77 N. W. 430); *Shadewald v. White,* 74 Minn. 208 (77 N. W. 42). The entire subject is covered in *Newcomb v. Brooks,* 16 W. Va. 32, where, after noticing the general rule, the court observes that:

"This rule is not confined to trustees and fiduciaries, in the technical meaning of the words, but it extends to every person who is within the reason of the rule,—that is, to every person who, by his connection with another person, or who, by being employed or concerned in his affairs, has acquired a knowledge of his property; and any such person occupying such confidential relation to another, comes within the rule we have laid down. In other words, the rule implies every relation in which there may arise a conflict between the duty which the purchaser owes the person with whom he is dealing, and his own individual interest."

These decisions announce what is often denominated the extreme English rule, and which, though having much in its support, is subject to the criticism of undertaking to shield the trustee from temptation, to the extent of encroaching upon his freedom of contract, in matters not involving his duties as trustee. If concerned in bringing about the sale at which he is purchaser, as in some of the cited decisions, or if he owe some duty with respect thereto, then there is good reason for adjudging such a sale voidable. It is conceded that the relation must be one in which knowledge, by reason of the confidence reposed, might be acquired, or power exist which may affect injuriously the interests of *cestui que trust,* or advance that of the trustee. If, however, no advantage might be gained by reason of the relation, the principle does not apply. See note to *Credle v. Baugham,* (N. C.) 136 Am. St. 787; *Starkweather v. Jenner,* 27 App. Cas. D. C. 348. Here, the receiver was not in the actual occupancy of the land, but leased the same to tenants, collected the rents, paid taxes and interest, and generally looked after the farm. Such relation to the parties cannot well be said to have afforded special means of knowledge, nor to have conferred power to affect injuriously the interests of the tenants in common. Other bidders at the sale had the same opportunities as had he, to examine the land. He owed the tenants in common no duty with respect to the sale by

the referee, even though standing in the relation of trustee toward them as *cestuis que trustent,* in the matter concerning the income from the land. Surely, his position as trustee conferred no power with reference to the sale; and as to farm land, no special opportunities of knowledge not enjoyed by others on examination were enjoyed. It is not necessary to go to the extent of many decisions in upholding the right of trustees to bid at judicial sales not brought about by themselves. No general rule with reference to these can be laid down, save that, to permit of being purchasers, their relation must not be such as to bring into conflict their individual interest with that of the trustee. We think this the true test; for, even though the trustee be in charge or possession of the property, if his duties with respect thereto are not such as that becoming a purchaser would put his individual interests in antagonism with his duties as trustee, there could be no temptation to go wrong, and they ought not to preclude him from bidding at such a sale.

The decisions are too numerous for citation, and we are content with saying that there could not well have been such conflict in the case at bar, and for that reason, we affirm the ruling by which the sale was confirmed.— *Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.