L. C. DEAN, Appellant, v. M. E. CLAPP, Receiver of Mills County National Bank, et al., Appellees.

No. 43590.

JUNE 19, 1936.

Cook & Cook, for appellant.

C. T. Genung and D. E. Whitfield, for appellees.

HAMILTON, J.—A brief summary of the facts out of which this controversy arose will enable us to better understand the legal question involved. Among the assets which came into the hands of M. E. Clapp, Receiver of the Mills County National

Bank of Glenwood, Glenwood, Iowa, was a note in the principal sum of $2,151.48, bearing date of May 10, 1932, and signed by John W. Johnson (now deceased) and Verna R. Johnson, which note was secured by a second mortgage upon 200 acres of real estate in Mills County, Iowa, which was junior to a first mortgage of approximately $21,000. The estate of John W. Johnson was insolvent and consisted of only the real estate covered by said first and second mortgages, and a small amount of exempt personal property. There were other judgments junior to the first and second mortgages of approximately $10,000. The firm of Genung & Genung were attorneys for Mr. and Mrs. Johnson and continued to represent Mrs. Johnson after Mr. Johnson's death. The matter of a compromise settlement of the Johnson item of indebtedness was agreed upon between the receiver and the attorneys for Mrs. Johnson, whereby this second mortgage note was to be settled for the sum of $500 and an assignment thereof made to N. S. Genung for Mrs. Johnson. This settlement was submitted to the Comptroller and was approved by him. The sum of $100 was paid down and the balance was to be paid when the note and mortgage were duly assigned and delivered. Before the matter was finally approved in open court the receiver requested that the matter be heard at a public hearing upon notice. Accordingly, the court set the matter down for hearing and ordered notice given by publication in a newspaper, the order reciting "that notice of said hearing be given to all creditors of the Mills County National Bank of Glenwood, Iowa, and to all persons interested therein." The day before the hearing, one L. C. Dean, appellant herein, filed what is denominated "objections to application to sell asset No. 223, John W. and Verna R. Johnson." He sets up in these objections that the offer of $500 was inadequate, and that he as objector had offered more for the purchase of said note and mortgage than the $500 offer. It developed at the hearing that his offer was $600. It appears that he had attempted to purchase the farm from Mrs. Johnson. Being unsuccessful in this, he purchased of the Metropolitan Life Insurance Company the first mortgage, paying therefor $19,000. He said he thought he would try to settle these mortgages and judgments and buy the farm if he could make a deal. Mr. Dean is a banker living in Glenwood. He was not a creditor and was in no way interested in the trust of the Mills County National Bank. There was no issue raised on his objection by

way of resistance or motion to strike. No evidence was introduced, except by appellant. The attorneys for Mrs. Johnson appeared and cross-examined the witnesses. The receiver appeared by his attorney, D. E. Whitfield, and at the conclusion of the hearing the court denied said objections and approved the offer of N. S. Genung and ordered and adjudged that the receiver be empowered and authorized to execute and deliver an assignment of said promissory note and mortgage to said N. S. Genung on payment of the sum of $500 in cash. The notice of appeal recites that the appeal is from "the order approving the application" to sell said asset.

N. S. Genung has filed a motion to dismiss this appeal, upon the grounds that L. C. Dean has no interest in the result of said appeal and is not such an interested party in said matter as to be affected by the determination thereof, that he has no direct, immediate, or pecuniary interest in the subject matter of the litigation and the order appealed from does not affect a substantial right of his, and that he has no such interest in the subject matter in which said order appealed from was made as to be aggrieved or prejudiced thereby.

The question with which we are confronted is, May an entire stranger to a cause of action or proceeding appeal from an order approving sale of an item of personal property belonging to the trust, his only relation to the matter being that he desires to purchase and is willing and ready and able to pay and offers to pay more? Was he a party to the proceeding before the court, or does he have an interest in the subject matter of the litigation such as to authorize him to appeal from the order of the court approving the sale? We think the matter has never been squarely before this court. At least our attention has not been called to any case involving the identical question. In the case of Van Der Burg v. Bailey, 207 Iowa 797, 799, 223 N. W. 515, 516, we said:

"The right of appeal is not an inherent or constitutional right. The legislature may give or take it away at its pleasure. In other words, the permission to appeal is a gratuity, and the legislature has the right to say upon what terms and conditions it will grant this right."

Appellant frankly states in his testimony: "I am not a creditor or interested in any way in the trust of the Mills County

National Bank." Therefore, his only interest in this litigation was that of a mere speculator, who, without associating with himself any one of the creditors or other parties interested in said trust, as an entire stranger to the proceeding, files an application resisting the approval of the sale of the item of property in question. His interests were no more than those of any other person who might be interested in the purchase of such item. He had no standing in a representative capacity by which he was seeking to protect the interests of creditors of the trust. He cites no statutory authority, and indeed there is none, granting to him any such right. The real controversy here centers about the widow, who has a very vital interest in this matter, who is seeking to save her farm by compromise settlement of this debt, and the appellant, who is seeking to obtain a favorable position as the owner and holder of the first mortgage by which he might deprive her of the only hope she could possibly have of retaining the farm, the meager equity in which, with a few household goods, constitutes her entire earthly possessions. With this situation before us we are called upon to view the cold legal proposition and ascertain whether or not appellant's right to maintain and prosecute this appeal is "nominated in the bond." Appellant has furnished us with no authority from this or any other jurisdiction to sustain his right to appeal. We have therefore been compelled to make our own independent investigation, and we have not succeeded in finding a single precedent directly in point.

The nearest approach to the question is found in cases where the property has been struck off or sold to the successful bidder, and, on objections to the approval of the sale, or where the matter has proceeded to the point where the sale has been approved and the court on application or objection has set aside his order and ordered a re-sale. In such cases it has been held in a few jurisdictions—and our own court has recognized the same principle in a few cases—that such a bidder becomes a party of record to the proceeding and would therefore have the same right as any other interested party to maintain an appeal from such an order. This is based upon the reasoning that when the bid is once accepted, and especially after the sale has been once approved by the court, it becomes a binding contract, enforceable against the bidder. Penn Mutual Life Ins. Co. v. Creighton Theater Bldg. Co., 51 Neb. 659, 71 N. W. 279. We have held that until the bid is accepted and approved it remains

nothing more than an offer. The bidder has parted with nothing. He has subjected himself to no liability, nor has he in any way been injured or aggrieved and can in no sense be held to be a party of record to the proceeding. As said in Harney v. Crowley, 184 Iowa 1101, 1103, 169 N. W. 370, 371:

"The plaintiff, as bidder at the referee's sale, had no legal standing to demand an approval. His bid was an offer, and nothing more, and bound no party in interest until it had obtained the approval of the court."

Appellant argues that because the notice prescribed by the court contained the statement, "and to all persons interested therein," that the court had in mind bidders or prospective purchasers, and because the notice was thus addressed, that anyone and everyone who might be interested as a prospective bidder was thereby made a party to the proceeding. "Persons interested therein," as used in the court's order and in the notice, while in a broad general sense might be construed to include anyone who might be a prospective bidder, the term in its primary meaning and intent and purpose had reference to parties interested in the trust. The notice was to "the creditors and depositors of the Mills County National Bank of Glenwood, Iowa, and to all persons interested therein."

Appellant's theory that he is a party of record must therefore fail.

May he, by filing objections and proffering a bid, create in himself an interest in the subject matter of the litigation of such immediate and pecuniary nature or character as to bring himself within the class of persons whose interest would be adversely affected by the order of the court or the determination of the matter on appeal?

"A cardinal principle which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have an interest in the subject matter of the litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have an interest in the particular question litigated, but his interest must be immediate and pecuniary and not a remote consequence of the judgment." R. C. L., Vol. 2, page 52.

"The damage or grievance which entitles a party to a writ

of error or an appeal, within this rule, must be a direct and positive one, effected by the judgment concluding and acting upon his rights; and such damage must be by the record, and not in consequence of it.'' R. C. L., Vol. 2, page 53.

Manifestly, appellant's interest in the subject matter of the litigation does not bring him within the rule above announced.

Appellant likewise contends that objector's right to appear was not challenged in the court below, and therefore cannot be raised by motion to dismiss the appeal, and cites the case of Keeling v. Priebe, 219 Iowa 155, 158, 257 N. W. 199, 201, wherein the court said:

" 'An objection based upon plaintiff's incapacity to sue should ordinarily be taken advantage of by defendant at his first opportunity, and before trial, verdict, or judgment. Defendant admits plaintiff's capacity to sue when he pleads to the merits, or files a counterclaim, or files his answer pending a demurrer for incapacity to sue. Failure to object at the proper time, as by demurrer or answer, constitutes a waiver of an objection based upon plaintiff's capacity to sue.' ''

This principle could have no application here. Appellant's right to maintain this appeal could not be attacked in the court below and could only be raised as it is raised, by motion to dismiss the appeal. In the settlement of estates or trusts, whether in equity or probate, dealing with matters concerning which the court is called upon to exercise its judicial discretion the court —as a matter of grace or favor, in the interests of absolute justice to those interested in the trust property,—may permit a matter of this character to be called to its attention in any way not forbidden by law. As stated in McCallum v. Chicago Title & Trust Co., 203 Ill. 142, 67 N. E. 823, 824:

"The probate court, upon its own motion, had the right to refuse to approve the sale if the sale was improperly made, and the fact that its attention was challenged to the fact that the property had been sold for an inadequate sum, by a person who stood ready to pay more upon a resale than the property had been sold for, did not divest the probate court of power to decline to approve the sale and order a resale in case the sale had been improperly made. We do not hold that an intermeddler may appear in the probate court at any time and

object to the confirmation of a guardian's sale solely because he may think the property was sold for too small an amount, but do hold that when a prospective bidder at a resale appears in court, and offers to make a bid in excess of the amount for which the property was sold, and as evidence that his proposed bid is made in good faith deposits in court, in cash, an amount in excess of the amount of his proposed bid, upon the objection of such proposed bidder the court may properly investigate the question of the propriety of approving the sale, and, if it appears that there is legal objection to the approval of the sale, may disapprove the same and order a resale of the property."

Having by sufferance of the court been permitted to be the instrument by which the matter is called to the attention of the court, and the court having heard the objections, and in the exercise of his discretion determined the matter adversely to the contention of the stranger, may this stranger to the record, with no interest whatever in the estate or trust, prosecute an appeal to this court for review? We have not been able to find a single precedent where this has been even attempted without joining some other person having an interest in the subject matter of the litigation.

This brings up the final proposition of appellant wherein he asks this court that if we find that he has no standing to maintain this appeal, that the matter be left open and sent back, to the end that others interested might be joined with him, and he voices the assurance that such interested parties could be easily found. If the matter were of any considerable consequence to the real parties in interest, namely, the creditors, this last appeal of appellant might meet with our favor. But we cannot see our way clear to permit a continuation of further litigation over this matter involving a $100 raise in the bid. While there is some evidence to the effect that appellant might be interested in going even higher, the only bona fide bid made—and this was not accompanied by any certified check or cash—was $600, which was an increase of only $100. Based on matters of percentage, this is quite an increase over the former bid which was accepted by the court, but considered in the aspect of the per cent added to the total assets and the amount of increase to each of the several hundred depositors and creditors of the bank which would be occasioned thereby, the matter is inconsequential, if not infini-

tesimal, especially when viewed in the light of the broad discretion vested in the court in matters of this character. This matter of the court's discretion is very ably set forth in an early Virginia case, Carr et al. v. Carr et al., 88 Va. 735, 14 S. E. 368, 370, wherein the learned court said:

"The court in acting upon the matter was called upon to act in the exercise of a sound legal discretion, in view of all the circumstances. It is to be exercised in the interest of fairness, prudence, and with a just regard to the rights of all concerned. Opinion of Staples, J., in Brock v. Rice, 27 Grat. [68 Va.] 812, 816, citing Taylor v. Cooper, 10 Leigh [37 Va.] 317, [34 Am. Dec. 737]; Daniel v. Leitch, 13 Grat. [54 Va.] 195, 211, 214; Blossom v. Railroad Co., 3 Wall. [196] 205-207 [18 L. Ed. 43]; Ror. Jud. Sales, pp. 30, 55, 56. Judge Staples in that case says also, [27 Grat. (68 Va.) 812] on page 815: 'Whether the court will confirm the sale must, in great measure, depend upon the circumstances of each particular case. It is difficult to lay down any rule applicable to all cases; nor is it possible to specify all the grounds which will justify the court in withholding its approval. If there is reason to believe that fraud or mistake has been committed to the detriment of the owner or the purchaser, or that the officer conducting the sale has been guilty of any wrong or breach of duty to the injury of the parties interested, the court will withhold a confirmation. Either party may object to the report, and the purchaser himself, who becomes a party to the sale, may appear before the court, and have any mistake corrected.' Roudabush v. Miller, 32 Grat. [73 Va.] 454; Berlin v. Melhorn, 75 Va. 639; Hansucker v. Walker, 76 Va. [753] 755; Langyher v. Patterson, 77 Va. 470; Terry v. Cole's Ex'r, 80 Va. 695. In the last-named case it is said: 'Confirmation is the judicial sanction of the court. Until then, the bargain is incomplete. Until confirmed by the court, the sale confers no rights; until then, it is a sale only in a popular, and not in a judicial or legal, sense.' The chancellor has a broad discretion in the approval or disapproval of such sales. The accepted bidder acquires, by the acceptance of his bid, no independent right, as in the case of a purchaser at a sale under execution, to have his purchase completed, but is merely a preferred proposer until confirmation by the court of the sale, as agreed to by its ministerial agent. In the exercise of this discretion, a proper regard

▬▬▬ ▬▬

is had to the interest of the parties and the stability of judicial sales. By sanctioning a sale, the courts make it their own. There is a difference between such sales and ordinary auction sales and sales by private agreement. In cases of sales before a master, the purchaser is not considered as entitled to the benefit of his contract until the master's report of the purchaser's bidding is absolutely confirmed."

The same rule is recognized in our own decisions. In the case of Harney v. Crowley, supra, we said:

"We think the district court should be deemed to have a large discretion in this class of orders, and that it is not necessarily bound to refuse its approval of the highest bid at referee's sale simply because somebody raises the bid at the time of presentation. It has, however, at all times, the undoubted power to refuse its approval of the high bid at the sale. Theoretically, it must be true, also, that a situation may be created at such a time as to make it the imperative duty of the court to refuse its approval. Whereas it may exercise its broad discretion to refuse a slightly higher bid, yet such discretion must become narrower in proportion as the increased bid should become larger. It must be true, theorctically, therefore, that the increased bid could be so large as to render it the imperative duty of the trial court to refuse its approval of the bid presented by the report of the referee. When that point is reached in a given case it may not always be a question of easy solution." Dyer v. Dyer, 220 Iowa 405, 262 N. W. 671.

The expense of litigation has already far exceeded the amount to be gained. It is "not worth the powder."—Appeal dismissed.

DONEGAN, C. J., and ANDERSON, PARSONS, ALBERT, MITCHELL, and KINTZINGER, JJ., concur.