CARL H. CRISWELL et al., Appellants, v. RALPH F. CRISWELL et al., Appellees.

No. 44881.

OCTOBER 24, 1939.

Lane & Waterman, for appellants.

Jebens & Butenschoen and Hoersch & Hoersch, for appellees.

BLISS, J.—The appellant Carl H. Criswell and the appellee Ralph F. Criswell are brothers, and together with the appellee Vivian Ione Criswell, the wife of Ralph F. Criswell, are the joint, undivided owners of the land partitioned. The appellant Elizabeth Criswell, is the wife of her co-appellant. The appellee Ruel R. Dodds is a brother of Vivian Ione Criswell, and the person who made the belated private offer for the property, and whom the court declared to be the purchaser.

The land partitioned consists of 65 acres of farm land, fully improved, lying on the west side of a north and south highway, and 105 acres, also improved, lying directly opposite on the east side of the road. In the 65-acre tract, Carl owned an undivided one-fourth interest, and Ralph and his wife owned an undivided three-fourths interest. In the second tract, Carl and Ralph each owned an undivided one-half interest. The appellants occupied the 65-acre tract, and had so occupied it, as a homestead, for many years. The second tract was the homestead of the appellees. The brothers and their wives had jointly executed two mortgages covering the entire 170 acres, the first mortgage for $4,000, to the Federal Land Bank of Omaha, and the second, for $2,000, to the Land Bank Commissioner.

The appellees Criswell instituted the partition action as plaintiffs against the appellants, praying decree that the farm be sold as an entirety, at public or private sale. Decree was entered that the farm be sold, as a whole, at public sale, by the referee, with directions that he distribute the proceeds among the owners, according to their respective interests, after first paying all expenses, costs, taxes and prior liens, including the mortgages. Because of the unequal interests which each had in the respective tracts, the tracts were ordered to be appraised separately. Under the partition statutes, the land was to be sold in the same manner as land sold under execution. The date of the sale was fixed for January 16, 1939, and the statutory notice given thereof. The appraisers reported the value of the 65-acre tract as $5,750, and that of the 105 acres as $4,500. On January 14, 1939, the parties stipulated that the land might be sold subject to the mortgage incumbrance, instead of paying the purchase price in full. That is, the bid would be on the equity. This was announced at the sale.

There had been and was considerable ill feeling between the brothers, and, perhaps, for that reason, and to prevent any excessive bidding between them, each had an agent bid for him. Waldo W. Wissler was the bidding agent for Carl Criswell, and Roy Lobdell, an uncle of Mrs. Ralph Criswell was the bidder for herself and husband. W. T. Waterman, one of the attorneys for Carl and wife, in the partition proceedings, also appeared and bid. No doubt the appellees thought he was bidding for the appellants. There were about seventy-five or eighty present

at the sale. The brothers and their wives were present, as was also, Ruel R. Dodds, but none of them bid. The only bidders were Waterman, Lobdell and Wissler. The entire farm of 170 acres was finally sold to Wissler for $4,600, that being the highest and best bid. Wissler paid the referee $1,000, in cash, and agreed to pay the balance as soon as the sale was approved and a deed was delivered to him. The sale was conducted in every way as a sheriff's execution sale except that, as provided in Code sections 12344 and 12345, the sale had to be reported to the court for approval. George Butenschoen, one of the attorneys for Ralph Criswell and his wife in the partition proceedings, prepared the report to the court of the sale for the referee, setting out the facts, and reciting that he had sold the property at public auction "to Waldo M. Wissler for the sum of Forty-six Hundred ($4600.00) Dollars, he being the highest and best bidder therefor." He reported the sale as subject to the two mortgages, which the purchaser assumed and agreed to pay. He prayed that the report and the sale be approved and confirmed, and that he be authorized to execute a deed of conveyance to Wissler. The referee signed and swore to the report, on January 18, 1939. Attached to the report was a prepared order of approval, ready for the signature of the judge. Wissler, Waterman and Butenschoen met at the chambers of Judge Maines at 2 o'clock P. M., on January 18, 1939, for the order of approval. At that time, according to the testimony of Waterman, Butenschoen stated that "he had the signed report but didn't propose to file it; that he sought to have the matter set down for hearing on Monday, January 23rd; that he didn't have a higher bid, but that he could procure a bid of a thousand dollars more than was offered at the Referee's sale."

The following day, January 19, 1939, Ruel R. Dodds, the brother of Vivian Ione Criswell, filed in the office of the clerk of the Scott county district court a written offer to the referee of the sum of $5,600 over and above the unpaid principal of the two mortgages. On the same day the Criswell appellees filed objections to the report of the referee's sale, upon the ground of the Dodds' offer, and stating that the report should be amended so as to accept and approve the Dodds' offer. The objections further stated:

"That if the Court is unable to require the amendment of

said report so as to accept the offer of the said Ruel R. Dodds, then that the Referee's Report of Sale should not be approved of by the Court, and that a further sale of said premises should be held by the said Referee, or that said Referee be authorized to sell the said premises to the said Ruel R. Dodds at private sale.

"WHEREFORE, these objectors pray that the said Referee's Report of Sale be amended so as to accept the offer of the said Ruel R. Dodds or in the event that the Court find that it cannot legally accept said offer, that then and in that event the said Referee's Report of Sale be not approved of by the Court, and that said Referee be directed to make a further effort to sell said premises."

On the same day there was a hearing before the court, in which Dodds was examined by Wissler, as to the good faith of the Dodds' bid and as to whether it was in his own behalf or for his sister and brother-in-law. He testified that he bid for himself, but a reading of his entire testimony, and the surrounding circumstances leaves a doubt. He admitted being at the sale, and stated that he did not bid because he did not wish to bid against his brother-in-law, Ralph Criswell. While his examination was in progress the court continued the hearing. At 9:30 A. M. on January 21, 1939, the hearing was continued and concluded with the examination of the referee and W. T. Waterman, and the court took the matter under advisement.

At 1:57 P. M. on February 6, 1939, an instrument assigning his bid of January 16, 1939, and all his interest therein to the appellants, executed by Wissler, was filed in the office of the clerk of the court. At the same time the appellants filed in said office, the following written tender, to wit:

"Come now Carl H. Criswell and Elizabeth Criswell, defendants in the above entitled matter, and prior to execution of order of approval on referee's report of sale to Ruel R. Dodds of the real estate hereinafter referred to, hereby tender and make in open Court, subject to and reserving any and all rights which they may have in and by virtue of the referee's sale held January 16, 1939 at 2:00 P. M., an offer of $5625.00 for the property, detailed description of which appears in the decree

entered in said action, which said decree is dated the 26th day of July, 1938.''

On February 6, 1939, at 2 P. M., the court filed in the clerk's office, the court's order on the referee's report, wherein, without mentioning the bid of and sale to Wissler, the court finds:

''That the real estate hereafter described was offered for sale by the said Hugo L. Wilcken, Sole Referee at public outcry at the front door of the Court House, in the City of Davenport, Iowa, on the 16th day of January, 1939, in accordance with the decree, stipulation of the parties plaintiffs and defendants, and notice of sale and that prior to the said offer of said real estate for sale at said public outcry, the said Referee did at the time of said offer publicly announce that all bids made at said sale were subject to the approval of this Court, and the Court further finds:

''That the offer of Fifty-six Hundred ($5600.00) Dollars of the said Ruel R. Dodds for the real estate described in said report should be accepted by the Referee and that the report of sale of the said Hugo L. Wilcken, as Referee, should be modified and amended by the Court so as to accept the said offer and the sale of said real estate to the said Ruel R. Dodds should be approved and confirmed.

''IT IS NOW THEREFORE ORDERED, ADJUDGED AND DECREED By the Court that the report of sale of the said Hugo L. Wilcken, Sole Referee, be and the same is hereby modified and amended so as to include and accept the said offer of the said Ruel R. Dodds, and the said offer of the said Ruel R. Dodds is hereby accepted by the Court and all other bids made for the purchase of said real estate are hereby rejected by the Court. * * * ''

Thereafter a referee's deed to the property was delivered to Ruel R. Dodds, as directed in the court's decree.

To this order the appellants on February 6, 1939, filed exceptions on the following grounds:

''1. That the report of sale fails to refer to the fact that, at the public referee's sale by Hugo L. Wilcken, sole referee, on

January 16, 1939, the said property was bid in by Waldo M. Wissler, the high bidder, for the sum of $4600.00.

"2. That the Court erred in not accepting the bid of $4600.00 of Waldo M. Wissler, the high bidder at public sale held by referee.

"3. That the said order above referred to fails to disclose that the private offer of Ruel R. Dodds of $5600.00 was made on the 19th day of January, 1939.

"4. That under the decree entered in this said auction sale of the real estate is to be had at public auction; that the only authority of this Court under and by virtue of the terms of the decree, in the event that objections to the sale to Waldo M. Wissler are sustained, is to again offer the property for sale at public auction, proper notice to be given of such sale.

"5. That the Court erred in refusing to consider the offer of Carl H. Criswell and Elizabeth Criswell to purchase the property covered by the decree in said action for $5625.00, made prior to approval of sale to Ruel R. Dodds, which said offer was in excess of the offer of Ruel R. Dodds."

The appellants' grounds for reversal, on this appeal, are thus stated: First, ground 4 above stated; second, ground 5 above stated; third, that the court erred in not accepting the bid of $4,600 of Waldo M. Wissler, the high bidder at public sale held by referee.

A proceeding to partition real property in this state is strictly statutory, and these statutes expressly provide that the action for partition shall be by equitable proceedings. Since the property could not be equitably divided into the requisite number of shares it was necessary that it be sold and the proceeds of the sale divided. Section 12342 of the Code of 1935 provides that the notice of the sale shall be the same as when lands are sold by the sheriff on execution sale, and the sale shall be conducted in like manner. Section 11728 of the Code provides that a sheriff's sale on execution must be at public auction. The decree in this action also provided that the land should be sold at public sale. Code section 12344 requires the referee, after completing the sale, to report the proceedings to the court, and Code section 12345 provides that if the sale is approved and confirmed by the court the latter shall direct the referee to execute a conveyance to the purchaser. Where a public sale is

held it is not ordinarily necessary that the land be appraised, but in this case, because of the variation in the values of the two tracts, and the unequal shares of the joint owners in each tract, it was not only necessary that 'the land be appraised, but that each tract be separately appraised. The appraised valuation of the entire tract was $10,250. Counting the assumption of the mortgage indebtedness as a part of the purchase price, the highest bid at the public sale was $350 in excess of the appraisal, or $10,600. There °is nothing in the record on which to base any criticism of the manner in which the referee performed the duties of his office. The proceedings were regular in every respect and in strict compliance with the decree, and the governing statutory provisions. No one makes any contention to the contrary. The three appellees were at the sale, as was also Lobdell, who was the active bidding representative of the Criswell appellees. None of them saw fit to raise the final bid of Wissler. Neither did any of the other seventy or more persons present. The fact that the attorney for the Criswell appellees prepared the report of sale for the referee, asking the court to approve the sale, and attached to it an order to that effect, with a blank line for the judge's signature is persuasive evidence that Ralph F. Criswell and his wife, and Ruel R. Dodds were satisfied with the purchase price, and had no thought that it was inadequate. It is the contention of the appellants that the sale became objectionable to the appellees only when they became convinced that the real purchaser at the sale was not Wissler, but was Carl Criswell.

The appellants contend that because by decree the sale was at public auction, was fairly conducted, and for a fair price, and the appellees were present and had opportunity to bid, and because of the other attending circumstances, that the court abused its discretion in disapproving and amending the referee's report and accepting the bid of Dodds. There is authority both for and against their position outside of this state. This question, under varying circumstances, has been before this court a number of times, and the uniform holding has been that the high bidder at judicial sales, other than sheriff execution sales or sales by a trustee under a power, acquires no absolute or vested right in the property. The acceptance of his bid by the referee, or other ministerial agent of the court is

not conclusive upon the court. Such a bidder has been termed merely a preferred proposer, or preferred bidder, until the sale to him has been approved or confirmed by the court. The high bidder when he makes his bid knows that he makes it subject to the approval of the court, and that he will not be entitled to a conveyance until that approval is given.

■ We have held that the trial court has a large discretion in the approval or disapproval of the sale, but that, as in all instances where official discretion is vested, this power of the court or officer is not arbitrary, but it is a legal or judicial discretion, for which sound and proper reasons can be given. The appellants strenuously urge upon us that the court abused its discretion, in not approving the referee's report recommending the confirmation of the sale to Wissler. This is the full and complete relief to which they claim to be entitled. In view of the repeated holdings of the court that the highest public bidder is not entitled, as a matter of right, to receive the approval of his bid, and in consideration of the fact that the bid of Dodds, though tardy, was substantial, we do not feel justified in ignoring that bid, and ordering the acceptance of the lesser bid of Wissler. In cases cited below the court has rejected the highest bid at both public and private sales, and has accepted higher bids thereafter received. The court, of course, is not bound to do so, but it has that discretionary power. This particular relief asked by the appellees is therefore denied, and we hold that there was no error in not confirming the sale to Wissler.

■ While the trial court was within its jurisdiction and power in opening the sale for further offers for the property, it was bound, in exercising that power, to treat all active and present bidders fairly and alike, and to discriminate against none. Particularly was this true when one of the bidders was an owner of the property, part of which was his homestead, who, through his agent was the highest bidder at the sale, the "preferred" bidder, and the belated opposition bidder had no interest in the property, and claimed to be bidding for himself, and was present at the public sale but made no bid there.

■ While the fact that Carl Criswell was the accepted highest bidder at the sale did not give him an absolute right to the approval of his bid, it did give him some rights, and it burdened him with some obligations. He paid $1,000 to the

referee at the time of the sale, and he made a proposed contract from which he could not arbitrarily withdraw. He was obligated to perform that contract if the court approved the sale. The rights and obligations of such a bidder, and the duty of the court in such case, were expressed in Reece v. Cartwright, 209 Iowa 706, 708, 228 N. W. 641, 642, as follows:

''The court may not, therefore, treat the transaction as a mere farce. The offer to sell real property at judicial sale is, in its very nature, an offer in good faith, and for the purpose of forwarding and conserving the interests of litigants or claimants involved therein. In our own cases cited supra, we have always held that a purchaser at a judicial sale, such as sales by referees in partition, does not at once acquire a vested interest in the property, and that the sale is incomplete until ratified by the court. Upon ratification, the purchaser becomes possessed of the equitable title to the property. The necessary implication from these decisions is, however, that the successful bidder, by his offer, becomes at once possessed of a right which can be extinguished only by the court by refusing confirmation, in the exercise of a sound judicial discretion. The rights at this point, to be fair and just, must be reciprocal. If the court may not arbitrarily decline confirmation of the sale, there certainly can be no logical reason for saying that the successful bidder may arbitrarily abandon the offer which has been accepted by the officer or agent of the court who has been authorized thereby to make the sale.''

Since, as we have stated, the rights, to be fair and just, must be reciprocal, and the court cannot arbitrarily refuse to confirm the sale, neither should the court, when it has opened the door to receive the bid of a stranger, arbitrarily ignore the later and higher offer of the preferred and obligated bidder, and close the door in his face. After the bid at the public sale had been rejected, and the bidding was opened anew, the court should have continued to receive all bids offered and have accepted the last and highest bid.

If it was proper to receive Dodds' offer of $5,600 for the equity, it was still more proper for the court to accept the offer of $5,625 of Carl Criswell. This was a situation where it was exceedingly difficult, or almost impossible, because of the

different interests which each held, and because of the different values of the two pieces, to divide it in kind. It was therefore necessary to sell the land. It was not a case where the owners, and particularly Carl Criswell, desired the money more than the land. He was desirous of the land. He was living on the 65-acre tract. It was his homestead. He had advanced his own funds to make the place more desirable for his occupancy, notwithstanding he had but a joint interest in it. He wished to continue in its possession and ownership. For that reason he directed his agent to make the highest bid at the public sale. Ralph Criswell and his wife apparently were satisfied to take their share of the best purchase price obtainable, and when Wissler bid $4,600, they were content to permit the bid to go without a raise. As stated in the oral submission, it was a family controversy, and when the appellees learned that Carl was the successful bidder, they were not satisfied with the outcome of the public sale. Ordinarily we do not approve the acceptance of a bid which has been increased by but a small, proportionate amount over a previous bid, which had been accepted by the referee, at either a public or private sale. And had the bidders been other than the owners themselves, we would have no hesitancy in affirming the trial court, and this decision is not to be considered a precedent under such circumstances. But under the circumstances of this case there should have been no discrimination as between these two bidders. The controversy was something more than financial. We therefore hold that the trial court exceeded its jurisdiction in ignoring the higher bid of Carl Criswell, and accepting the lesser bid of Dodds. Accepting the higher bid of Criswell and substituting his name for that of Dodds would not have added to the expense, and furthermore the parties themselves are the only ones affected by any increased expense. It is an ancient and honored maxim, that ''Courts of equity delight to do justice, and that not by halves.'' Story's Eq. Pl. Section 72. See the case of Dyer v. Dyer, 220 Iowa 405, 262 N. W. 671, where the court permitted the bidders, in open court, to increase their offers. For other cases bearing upon the questions involved herein, see Loyd v. Loyd, 61 Iowa 243, 16 N. W. 117; Shearer v. Shearer, 125 Iowa 394, 101 N. W. 175; Brown v. Traul, 140 Iowa 728, 119 N. W. 149; Harney v. Crowley, 184 Iowa 1101, 169 N. W. 370;

Saunders v. Stults, 189 Iowa 1090, 177 N. W. 516, 11 A. L. R. 394; Damrow v. Iowa & Omaha Short Line Ry., 190 Iowa 996, 181 N. W. 271; Dean v. Clapp, 221 Iowa 1270, 268 N. W. 56; Fraizer v. Fraizer, 204 Iowa 724, 215 N. W. 946; Van Alstine v. Gilmore Exchange Bank, 224 Iowa 1311, 1318, 278 N. W. 604; Melin v. Melin, 189 Iowa 370, 178 N. W. 346; Central Trust Co. v. Gate City Electric St. Ry. Co. et al., 96 Iowa 646, 65 N. W. 982.

The decree of the trial court is reversed and the deed of the referee conveying the real estate, involved in this action, to Ruel R. Dodds, recorded in Book 82 of Land Deeds, page 110, in the office of the recorder for Scott county, Iowa, cancelled and set aside. The cause is remanded to the district court of Scott county, Iowa, and it is ordered and directed to make such proper order of record in conformity with the foregoing, and for such further proceedings as the interests and rights of the parties demand, with full power to such court to order a resale of the property, either public or private, in accord with the pertinent statutory provisions.—Reversed and remanded.

OLIVER, C. J., and HALE, SAGER, STIGER, and MILLER, JJ., concur.