**Roger THORNTON, Claimant–Appellant,**

v.

**ESTATE OF Grace THORNTON, Defendant–Appellee.**

No. 5–026.

Court of Appeals of Iowa.

March 30, 1995.

Larry G. Wilson and Ed Skinner of Skinner, Beattie & Wilson, P.C., Altoona, for appellant.

Randal B. Caldwell of Caldwell, Caldwell & Caldwell, Newton, for appellee.

Heard by DONIELSON, C.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Gertrude Thornton died testate on February 12, 1992. Her estate was opened, naming her five children, Roger Thornton, Keith Thornton, Harley Thornton, Margery Thornton Hibbard, and Donna Thornton Gahwiler, as beneficiaries. The will provided that the $1800 owed by one son, Roger Thornton, be deducted from his share of the estate, but otherwise the estate was to be divided evenly among the five children.

On August 6, 1993, the executors filed a petition for authority to sell farmland. Harley Thornton, as the executor, sought authority to sell this land since the 174 acres of farm real estate would not provide sufficient income to pay expenses and provide income to the beneficiaries. Roger filed an objection claiming the request for authority to sell represented an attempt by his younger brother, Harley, to gain control of family affairs. Roger further argued he had worked the hardest on the farm. Roger requested that the authority to sell be rejected and John Brower, who had previously withdrawn as executor, be reappointed. Following a hearing, the probate court authorized the sale of the farm property.

Notice of public auction of the property was published for two consecutive weeks in the local paper. The notice stated the time and place of sale and the legal description. The notice also provided the following *"Terms:* 15% down day of sale. Balance due March 1, 1994, .... Sale of this property is subject to court approval." At the auction, the farm land was offered in separate parcels. Roger bid $400 per acre, at which point the auctioneer declared all previous bids received to be void. During a recess, Harley questioned Roger about whether he had the funds to meet his commitment to buy the property. Roger told him he intended to use his twenty percent of the estate as his down payment. Harley informed Roger this arrangement was not satisfactory, since he was requiring a cash down payment.

When the bidding resumed, John Pool and Dan Birkenholz offered $405 per acre. Neither Roger nor any of the others in attendance submitted a bid over and above that amount. Consequently, the Pool–Birkenholz bid was declared as the highest bid and bidding was closed.

On November 1, 1993, a petition for approval of sale was filed and notice was mailed to all interested parties. Roger filed an objection to the sale, arguing he was offering $410 per acre, and because the sale had not yet been finalized, his bid should be considered the highest and should be accepted and approved by the court. A contract with $100 was offered but rejected by the executor.

At the hearing on approval of sale, lawyers for Roger presented the court with a check for $10,701 as down payment on Roger's $410 an acre offer. The executor argued Roger did not have the financial backing to cover the balance due on the estate. Roger maintained it would be in the estate's best inter-

est to sell the property at his $410 per acre bid. The district court declined to accept Roger's offer and confirmed the sale at the $405 per acre bid. Roger appeals. We reverse and remand with direction.

## I.

■ This probate matter was a proceeding in equity. *See* Iowa Code § 633.33 (1993). As a result, review is de novo. Iowa R.App.P. 4.

■ The sale involved in this case is a judicial sale. Judicial sales have been described as sales ordered by the court and conducted by marshals, masters, commissioners, or sheriffs, or by court-appointed fiduciaries including executors. 47 Am.Jur.2d *Judicial Sales* § 1, at 488 (1995). These sales are subject to confirmation by the court ordering the sale, and only become final upon being confirmed. *Id.* Judicial sales may be ordered in a variety of proceedings, including partition proceedings and proceedings for the sale of real property of a decedent. *Id.* at 489. Iowa Code sections 633.396–399 provide the procedure for sale of real property in an estate where no power of sale appears in a will.

The order for sale of real property must describe the property to be sold. Iowa Code § 633.396. The order for sale may direct whether the property is to be sold at private or public sale and the place of sale. Iowa Code § 633.396.

In all sales of property at public auction, the personal representative shall give such notice, in such form and manner, and to such persons or parties, as the court may prescribe. Iowa Code § 633.397.

After making any such sale, the personal representative shall make a verified report thereof to the court. Iowa Code § 633.399. The court shall examine said report, and if satisfied that the sale has been at a price and upon terms advantageous to the estate, and in all respects, made in conformity with law, and that it ought to be confirmed, shall confirm the same and order the personal representative to deliver a deed to the persons entitled to a deed. Iowa Code § 633.399. If not satisfied that the sale has been made in conformity with law and that it is in the best interests of the estate, the court may reject the sale and enter such orders as the court may deem advisable. Iowa Code § 633.399.

No objection was made in the trial court, or on appeal that the executor failed to perform any of the procedural requirements of these code sections.

## II.

The case law in Iowa on judicial sales is scarce. However, we believe strong guidance on the issue before us is provided in two related cases involving a judicial sale in partition proceedings. A summary of the factual background surrounding these cases was provided in the second of the two cases as set out below.

The land involved in this suit consists of two tracts, each with a set of improvements. One tract contains 65 acres and was occupied by Carl H. Criswell and wife, Elizabeth, as their home. Carl owned an undivided fourth interest in this tract. The remaining interest was owned by Ralph F. Criswell and wife, Vivian. The other tract contains 105 acres and was occupied as a home by Ralph and wife. Carl owned an undivided half interest in the 105 acres and the remaining interest was owned by Ralph and wife. In January 1937, Ralph and wife brought suit in partition for the sale of the entire 170 acres "at either public auction or private sale." Decree was entered in July 1938, appointing a referee to sell the land as an entirety at public sale. Such sale was had on January 16, 1939, and the property was bid in at $4,600 by one Wissler for Carl H. Criswell. Three days later, when the sale came before the court for approval, one Dodds, a brother of Vivian, Ralph's wife, made a written offer to the referee of $5,600 for the property. Carl H. Criswell then made a written offer to pay $5,625. The trial court approved the sale to Dodds at $5,600. From such order of approval, Carl appealed to this court. The order was reversed and the cause remanded to the district court "with full power to such court to order a resale of the property, either public or private."

Following the remand, a second public sale was had by the referee on March 15, 1940, at which the high bidder was Carl H. Criswell with a bid of $5,800. Ralph was present at the sale and submitted the next high bid of $5,790. On March 19th the referee filed a report of sale to Carl for the $5,800. On the same day Ralph filed objections to the report, accompanied by his written offer of $5,825 for the premises. Carl filed resistance to the consideration by the court of this offer of Ralph's, principally on the grounds that Ralph had had ample opportunity to bid and that a sale to him would be inequitable and unjust. Carl's resistance was on motion stricken by the court who by order dated March 20th provided that the referee's report of sale and Ralph's bid of $5,825 would be considered by the court on March 21st at 2:30 p.m. and that all parties should have the right to make any further bid at that time, upon the same terms previously ordered by the court and announced by the referee at the public sale on March 15th.

Pursuant to this order, Carl H. and Elizabeth Criswell, with their attorney, and Ralph F. Criswell with his attorneys, appeared in court at the time fixed. Carl's attorney orally stated: "We reserve all rights and exceptions in making any further bids," and thereupon bid $5,850. Ralph's attorney then announced a bid of $7,500. Carl's attorney advised the court that he would make no further bids. The court approved the sale for $7,500 to Ralph, who subsequently made settlement with the referee. From such approval, Carl and wife have appealed to this court.

*Criswell v. Criswell,* 230 Iowa 27, 29–30, 300 N.W. 533, 533–34 (1942) (citation omitted) (*Criswell II*).

■ In the first *Criswell* case, our supreme court found the highest bidder at a public sale is not entitled, as a matter of right, to a confirmation of the sale in their favor. *Criswell v. Criswell,* 227 Iowa 212, 220, 288 N.W. 130, 134 (1939) (*Criswell I*). Rather, the high bidder at a judicial sale merely enjoys the status of a preferred bidder. *Id.* In a judicial sale, the sale is incomplete until it is ratified, and until that time the highest bid is only an offer and the person making it has no standing to demand its approval. *Criswell,* 230 Iowa at 30, 300 N.W. at 534. The supreme court held that a court considering confirmation has a large amount of discretion in determining whether or not to approve the sale. *Criswell,* 227 Iowa at 220, 288 N.W. at 134. One of the primary concerns of a court involved in a judicial sale should ordinarily be to obtain the highest price it can fairly procure. *Criswell,* 230 Iowa at 31, 300 N.W. at 534.

An examination of the *Criswell* cases brings us to the conclusion that Iowa follows one of the three generally accepted rules regarding receiving bids in judicial sales after the public auction and before confirmation by the court.

There are three legal doctrines regarding the effect that should be given by a court which ordered the sale, when an advance or upset bid is offered for the property after it has been struck off at a judicial sale but before the sale has been confirmed:

(1) the "English" doctrine that the mere receipt of a substantially higher bid than that for which the property was knocked off is sufficient reason to refuse confirmation of the sale and to open the bidding;

(2) the doctrine that the fact that a higher bid has been offered is not alone a sufficient reason to support a refusal to confirm the sale;

(3) the doctrine that the entire matter of confirmation of judicial sales is left with the court, which may confirm or not in its discretion, entirely unhampered by either of the above-mentioned doctrines.

47 Am.Jur.2d *Judicial Sales* § 308, at 307 (1995). As the *Criswell* cases illustrate, Iowa falls into the third category mentioned above.

### III.

We turn now to the arguments advanced by counsel in their briefs. The appellee argues rather strenuously that Roger was at the auction and could have submitted a bid higher than the Pool–Birkenholz bid. The appellant takes issue with this argument and contends that Roger was unable to bid further for his $400 bid was rejected. In this

regard, we tend to agree with the appellee that Roger's bid of $400 was not formally rejected. However, he was certainly discouraged from bidding further when the executor, during the period of time bidding was at recess, stated: "I asked him if he had the money to—put down on the—on the bid, and he [Roger] says, 'Well, I don't need the money. I own 20 percent of the estate' and I said, 'That's—that's not the way the terms of the sale are set up. You're perfectly entitled to bid, but you have to be able to perform like any other bidder and put cash on the barrel head or you're not a qualified bidder.'" Although the record is silent as to what transpired after that, the record does establish that bidding was resumed. It was after bidding was resumed that the Pool–Birkenholz bid came in at $405.

The appellee also argues the overbid of Roger of $410 per acre was only five dollars more an acre than the bid at the auction and, therefore, it should be rejected. As it relates to this argument, we note the following statement by our supreme court in *Criswell I:*

> Ordinarily we do not approve the acceptance of a bid which has been increased by but a small, proportionate amount over a previous bid, which had been accepted by the referee, at either a public or private sale. And had the bidders been other than the owners themselves, we would have no hesitancy in affirming the trial court, and this decision is not to be considered a precedent under such circumstances.

*Criswell,* 227 Iowa at 222, 288 N.W. at 138.

Although the facts here are not completely in accord with those in *Criswell,* Roger is the beneficiary of a twenty percent ownership in the farm in question. When we couple his ownership interest with the fact that he was certainly discouraged during the course of the auction from bidding further, his deep interest in keeping the farm in the family, and what appears to be a rather firm position by the executor that Roger's bid should be rejected for allegedly he was without financial resources to perform (even though a ten thousand seven hundred and one dollar check as down payment was tendered at the hearing on the approval of sale), we believe this to be a worthy exception to the general rule set forth above. We also believe the following statement from *Criswell II,* although admittedly it appears in a case that involved a partition auction, yet has merit, "We have held that ordinarily the discretion to reject an increased bid becomes narrower as that bid becomes larger. It follows that the discretion of the court to reject the high bid reported by the referee ordinarily widens as the additional bids become larger." *Criswell,* 230 Iowa at 31, 300 N.W. at 535 (citations omitted).

## IV.

We find the district court abused its discretion in ordering the confirmation of the sale. As a result, we reverse the district court's confirmation of the sale and in the event a deed issued that deed is vacated and set aside. We remand this case to the district court with the following directions.

Roger's $410 bid is to be accepted and the sale to him is to be approved unless within fifteen days after procedendo issues Pool and Birkenholz files with the clerk of court of Jasper County, Iowa, a written bid in a higher amount and in that event, the clerk is to promptly notify the presiding judge of the filed bid who, in turn, shall fix a time and place where Roger and Pool and Birkenholz are to appear personally and/or by counsel whereby each shall be afforded the opportunity to submit oral bids in higher amounts. The trial judge shall prescribe the method of notifying the interested parties and their attorney of the time and place it has fixed for the hearing to submit oral bids. The bid of the highest bidder shall be accepted and approved by the court and the high bidder shall, as provided in the published notice of sale, pay fifteen percent down on the day the bid is accepted by the court. The trial court shall issue such other orders as it deems necessary to complete the sale including possession date, final payment date, prorating of taxes, and encumbrances and easements that the title may be subjected to.

**REVERSED AND REMANDED.**