# Richmond.

### MOORE v. TRIPLETT.

#### JANUARY 12, 1899.

1. SALE OF LAND IN CONSIDERATION OF PAYMENT OF DEBTS OF GRANTOR—
   *Liability of Purchaser.*—Where a debtor sells and conveys his land to a
   purchaser who assumes the payment of certain debts of the vendor in
   consideration of the conveyance, the purchaser becomes personally
   responsible for the payment of the debts, and, as between him and his
   vendor, is primarily liable.

2. CHANCERY PRACTICE—*Judicial Sales—Confirmation—Discretion.*—Whether
   a judicial sale should be confirmed or not depends upon the circum-
   stances of the particular case. The court should exercise a sound
   legal discretion with a view to fairness, prudence, and just regard to
   the rights of all concerned. The action of the court should be such
   as to induce bidders to attend, and to enourage fair, open, and com-
   petitive bidding in order to obtain the highest possible price, and in-
   spire confidence in the stability of judicial sales.

3. CHANCERY PRACTICE—*Judicial Sales—Upset Bids—Who may not Put In.*—
   A court of equity must exercise a sound legal discretion as to whether
   or not it will accept an upset bid on land sold under its order. A mere
   advance of ten *per cent.*, though well secured, is not always to be ac-
   cepted without regard to the circumstances of the case. But a sub-
   stantial and well-secured upset bid should be accepted, unless there
   are circumstances going to show that injustice will be done to the pur-
   chaser, or other person. Usually, however, one who was present at the
   sale, and bid on the property, or had the opportunity of bidding, will
   not be permitted to put in an upset bid.

4. CHANCERY PRACTICE—*Judicial Sales—Sales in Parcels—Setting Aside Only
   Part of Sales—Rights of Purchaser.*—Where land has been sold in parcels,
   and one person has become the purchaser of two or more parcels to be
   used together, and the purchase of one parcel was the inducement to
   become the purchaser of the other, if, by reason of an upset bid, the
   purchaser loses one parcel, a court of equity ought not to compel him
   to take the other against his consent, especially if the terms of the
   upset bid preclude a resale of the tract in the same manner as before.

Appeal from several decrees of the Circuit Court of Shenandoah county, pronounced in three chancery suits heard together, in two of which the appellees, or some of them, were the complainants, and the appellants were the defendants, and in the other the appellants were the complainants, and some of the appellees were the defendants.

*Affirmed.*

M. M. Moore borrowed of Israel Allen five thousand dollars May 9, 1882, and a like sum July 20, 1882, which sums he secured by deeds of trust·on portions of his real estate. On July 11, 1885, he was largely indebted to his mother on various accounts, and she was his surety for a large sum. In consideration of these sums, and in the further consideration that his mother assumed the payment of the two debts to Allen, aggregating $10,000, and of certain other enumerated debts, he conveyed to her by deed bearing date July 11, 1885, all of his real and personal estate, including that covered by the Allen deeds of trust. His wife did not unite in this deed. By deed bearing date the same day, July 11, 1885, his mother conveyed the same property to a trustee to furnish a support to her son, and the residue for the benefit of his wife and children, subject, however, to the payment of the debts for which she was liable for her son. Both deeds were admitted to record on the same day. A few days thereafter these two deeds were assailed as fraudulent by Triplett and others, creditors of M. M. Moore whose debts were not secured. Pending this litigation Allen, who was a party to the suit, directed his trustee to make sale of the land conveyed in trust to secure his debts. This sale was enjoined. Finally the two causes were heard together, and the deeds aforesaid were declared fraudulent and void, and the property conveyed held liable for complainants' debts. Liberty was asked to file a bill of review for errors apparent on the face of the record, but was refused. On appeal to this court, the decree holding the deeds fraudulent was reversed, and the cause remanded for further proceedings.

The property conveyed by M. M. Moore to his mother, Mrs. A. M. F. Moore, embraced not only the land conveyed in trust to secure the debts of Israel Allen, but other real and personal property upon which his creditors had no lien. A large part of the consideration of the deed to her, however, was certain enumerated debts of M. M. Moore, the payment of which she had assumed. It was contended on behalf of Mrs. A. M. F. Moore and those claiming under her that the assumption of the debts of M. M. Moore by Mrs. A. M. F. Moore was a mere personal undertaking on her part, and created no lien on the land conveyed by her, and no trust in favor of the creditors. The deed of settlement made by Mrs. A. M. F. Moore was in the following words and figures :

"Whereas, Amanda M. F. Moore, of the county of Shenandoah, State of Virginia, has become the purchaser of certain real and personal estate in said county and State from Morgan M. Moore, as is evidenced by deed bearing date of July 11, 1885, to which special reference is hereby made, and she being desirous, as far as legal and proper for her to do, to dispose of the same for the benefit of her son, Morgan M. Moore, his wife and children, of whom there are now two, and such other or others as may be begotten or born in the lawful wedlock of M. M. Moore and Kate G. Moore his wife, the property hereinafter conveyed ; but on the following conditions, and these alone :

"1. The said M. M. Moore is to have from the said estate a fair and reasonable support, to be suitably and regularly furnished. The grant as to this is to be personal, and not liable in any wise for his, M. M. Moore's debts in *præsenti* or in *futuro*, and to be a charge on said estate for that purpose, and none other, and the proceeds arising therefrom, *i. e.*, from said estate, to be applied not otherwise, except as hereinafter provided.

"2. For the sole and separate use of Kate G. Moore and her children, begotten as aforesaid, free from the use, control, debts, and charges of or against her husband, the said Morgan M. Moore.

"And whereas, there are debts due by M. M. Moore, and which the said Amanda M. F. Moore, in one way or the other, is security or endorser, amounting to a sum larger in amount, but not now definitely ascertained nor secured ; and the said Kate G. Moore, wife of the said M. M. Moore, is willing that the said debts be paid in two, three, and four years, either by sale of part of said estate on judicious terms by the trustee hereinafter named, the said K. G. Moore and her husband uniting in the deed, the debts be paid proportionately and yearly from the date thereof, and on the

consideration of the acceptance of these terms by said debtors, she, the said Kate G. Moore, agrees to unite in this conveyance, making a full relinquishment of her contingent right of dower as to them, but on no other condition whatever.

"And whereas, it is the true intent and meaning of this instrument that said M. M. Moore shall have the support aforesaid, the said Kate G. Moore and children be supported, and the children be educated out of the proceeds of said farm and estate, she, the said Kate G. Moore, shall have power to make leases, rent or farm said real estate judiciously, and sell stock off and from said farm and forage, as though she were a *feme sole* or separate trader; in fact, to manage said estate by suitable agents and hands, so as to carry out the purposes and intentions of this indenture, but not otherwise, and the authority above recited is not meant to authorize the said Kate G. Moore to charge this estate for debts not made in the legitimate operations of the estate aforesaid, or in or by endorsements or security for others, nor beyond the yearly rents and profits, and the rents and profits shall be held for the joint use of Kate G. Moore and her children as aforesaid. But power is hereby given the said Kate G. Moore by and with the consent of the trustee hereinafter mentioned, to mortgage said real estate for the payment of the legitimate debts of the aforesaid A. M. F. Moore which she may be responsible for as security for Morgan M. Moore, as for the liens that are now existing on the real estate hereby conveyed. In view of the above recitals, and to effectuate the purposes of the same, and in strict conformity thereto, and for the consideration of natural love and affection, and of the sum of one dollar in hand paid at and before the sealing and delivering of these presents, the receipt whereof is hereby acknowledged—

"I, Amanda M. F. Moore, do hereby grant, release, and confirm unto Robert J. Walker, trustee, to have and to hold, under the provisions of this trust, with all of recitals aforesaid, the following real and personal estate conveyed to me by Morgan M. Moore by deed, bearing date July 11, 1885, to which reference is hereby made; and said deed is hereby made part and parcel of this one, so far as it recites the property, real and personal, conveyed. The said Kate G. Moore does not decline the provisions of this trust, and signs the same to signify her acceptance, except that she does not mean to so sign unless the provisions as it applies to the debts be accepted. In the event the creditors accepting the provisions of this trust as to the debts which Kate G. Moore has conditionally agreed to pay and she fails in any wise to comply with the provisions of this trust as to said debts, said creditors may require the trustee, Robert J. Walker, to sell on such terms and time, and after notice in writing, such property, real or personal, as he may think most judicious, and after due advertisement. And the said M. M. Moore, with his wife, as far as may be necessary,

unites in this trust with its recitals, to signify his consent thereto, and to concur in its provisions.

"Witness the following signatures and seals this, the 11th day of July, 1885 :

"A. M. F. MOORE,          [Seal.]
"M. M. MOORE,            [Seal.]
"KATE G. MOORE,          [Seal ]
"ROBT. J. WALKER."  [Seal.]

When the sales of the property were reported to the court, sundry exceptions thereto were filed by the Moores and others, and amongst them was one because substantial upset bids were filed on several of the tracts.

The other facts sufficiently appear in the opinion of the court.

*James H. Williams* and *John E. Roller*, for the appellants.

*Barton & Boyd, L. Triplett, Jr.*, and *Walton & Walton*, for the appellees.

RIELY, J., delivered the opinion of the court.

This is the sequel of the case of *Moore* v. *Triplett*, reported in 23 S. E. 69.

The main question involved by the appeal is the propriety of the decree of the Circuit Court subjecting to the payment of the debts of Israel Allen and others the land conveyed by Morgan M. Moore to his mother by the deed of July 11, 1885, and settled by her by a cotemporaneous deed on his wife and children.

The debts were due by him, and assumed by his mother. They constituted a large part of the consideration for the conveyance to her of his land, and were successfully relied upon at the hearing of the former appeal to sustain the validity of the said deeds. She died without having paid the debts, and they have not since been otherwise discharged. They have remained unpaid from 1885 down to the present time, upwards of thirteen years. The debts of Allen were secured by prior deeds of trust on parts of the land conveyed by Morgan Moore to his mother.

By accepting the conveyance and promising to pay the debts, she became personally liable for them, and, as between her son and herself, she was primarily bound.  This doctrine has been so repeatedly recognized by this court as no longer to admit of question.  *Willard* v. *Worsham*, 76 Va. 392; *Osborne* v. *Cabell*, 77 Va. 462; *Francisco* v. *Shelton*, 85 Va. 779; *Tatum* v. *Ballard* 94 Va. 370; and *Ellett* v. *McGhee*, Id. 377.

The *assumpsit* by the mother of Morgan Moore of his debts constituting a part of the consideration for the conveyance to her of his land, it would be against equity and good conscience to permit her to make a voluntary settlement of the property so as to protect it from liability for the debts, so assumed, in the hands of her beneficiaries.  A man must be just before he is generous.  He cannot make a valid gift of his property and leave his obligations unsatisfied or unprovided for.  Indeed, the deed of settlement itself seems to contemplate the payment of the debts assumed from the property conveyed, and makes provision for a sale of a part thereof for that purpose.  The grantor was apparently in doubt as to her right to make the settlement, but expresses her desire to do so " as far as legal and proper for her to do."  The deed is inartistically drawn, but it is fairly plain that the grantor intended to provide, in the deed of settlement, for the payment, from the property thereby settled, of the debts which she had assumed, in the event that they were not otherwise paid.  There is, therefore, no error in the decree for the sale of the land to pay the said debts.

Another assignment of error was the refusal of the court to accept the upset bids put in on certain parcels of the land, and its confirmation of the sale that had been made thereof.

Whether a court should confirm a report of sale depends in a great measure upon the circumstances of the particular case. In acting upon the report, it must exercise not an arbitrary, but a sound legal discretion in view of all the circumstances. It must be exercised in the interest of fairness and prudence, and with a just regard to the rights of all concerned.  This is

the result of many cases on the subject. *Hudgins* v. *Lanier, Bro. & Co.,* 23 Gratt. 494; *Brock* v. *Rice,* 27 Gratt. 812; *Roudabush* v. *Miller,* 32 Gratt. 454; *Berlin* v. *Melhorn,* 75 Va. 639; and *Hansucker* v. *Walker,* 76 Va. 753.

In *Todd* v. *Gallego Mills Mfg. Co.* 84 Va. 577, it is said: "All the cases agree that the court must sell at the best price obtainable, and when a substantial upset bid, well secured and safe, for ten *per cent.* advance, is put in before confirmation, it is as much a valid bid as if made at the auction. This is the settled law of this court, and will doubtless so remain until the Legislature shall [otherwise] provide by law as has been done by the English Parliament." This same language was quoted with approval in *Ewald* v. *Crockett,* 85 Va. 299.

The above statement of law was construed by the counsel of the appellants to be a departure from the previous cases and the former practice in this State, and to mean that " a substantial upset bid, well secured and safe, for ten *per cent.* advance, put in before confirmation," was *always* to be accepted, without regard to the circumstances of the case, and that the court had no discretion in the matter. Such a construction is a misapprehension of the import of that decision. The court in that case found no equitable circumstances, which, in the exercise of a sound legal discretion, called for a rejection of the upset bid. It was in amount a large advance on the price obtained at the sale, and in that view substantial. It was well secured and safe. The creditors whom it benefitted desired its acceptance, and the purchaser, as the court took pains to show at length, had no just ground of complaint. We understand the decision in that case to mean simply that a substantial and well secured upset bid should be accepted, unless there are circumstances going to show that injustice would be done to the purchaser or other person. That such was the purport of that decision, and the understanding of the judge who delivered the opinion of the court in that case, and also in *Ewald* v. *Crockett, supra,* is clearly manifested in the subsequent case of

*Carr* v. *Carr*, 88 Va. 735, where he enunciates the long and
well established rule in Virginia that "the court, in acting
upon the matter, was called upon to act in the exercise of a
sound legal discretion in view of all the circumstances. It is
to be exercised in the interest of fairness, prudence, and with
a just regard to the rights of all concerned." And he refers
to the cases decided long before *Todd* v. *Gallego Mills Mfg. Co.*
to sustain his declaration of the practice and the law on the
subject in this State.

Considering the circumstances of the case at bar, and apply-
ing the rule prevailing in this State, our conclusion is that the
Circuit Court did not err in rejecting the upset bids and con-
firming the report of sale of the parcels of land in question.

The sale took place under favorable circumstances, was fairly
made, and there is not a suggestion of misconduct or impro-
priety on the part of any one.

There is no evidence or complaint even that the land did not
sell for a fair price, and bring its market value. The commis-
sioners state in their report that it brought a good price, and
recommend the confirmation of the sale.

The main upset bid was put in by one who had an agent at
the sale, who bid for him. It has been generally understood by
the profession, and enforced by the courts, that one who was a
bidder at the sale, by himself or by an agent, which is the same
thing, or was present and had the opportunity to bid, would
not, as a general rule, be permitted to put in an upset bid. He
must bid at the sale in open competition with all others what
he is willing to give for the property. A different rule would
have a pernicious effect upon judicial sales of property.

The contention over the rejection of the upset bids is not
made by the parties who put in the same, but by the owners of
the land. As respects the rights of the latter, it appears that
every fair means was resorted to that was likely to realize the
best possible price at the sale. It was advertised in two of the
county newspapers for upward of sixty days, and the several

tracts divided into two or more convenient parcels for the pur-
poses of the sale. The parcels were first offered for sale, and
then the tract as a whole, with the understanding that the
largest amount realized would be reported to the court as the
sale. That by parcels realized the largest amount. The entire
farm, embracing all the tracts and parcels, with the exception
of the mansion house and fifty-four acres that had been cried
out to the wife of Morgan M. Moore, was then offered as a
whole, without, however, any advance bid being made on the
sale by parcels. The mansion house and fifty-four acres was
excepted from the offer of the whole farm at the request of
Morgan Moore. As stated by the judge of the Circuit Court,
"the sale of the land seems to have been conducted by the
commissioners in strict accordance with the wishes of the
Moores, the owners of the land. The terms of the sale were
modified to advance their interest. The land was offered in
such parcels as they indicated, and offered as long and as often
as they requested. They did not then, nor do they now, make
any complaint that the sale was not an open and fair bidding,
and the prices obtained were not all that could have been
expected and desired." The circumstances of the sale furnish
them no ground for any complaint.

The case of the purchaser would be very different if the upset
bids were accepted. They were made on only a part of his
purchases, and his other purchases would stand and be con-
firmed. The farm is composed of lowlands and uplands. The
bottom lands are fertile and productive; the uplands are poor,
and in part wild and uncultivated. In dividing the farm for
the purposes of sale, it was wisely so laid off into parcels that
any one buying a parcel of the productive bottom land could
also buy a contiguous or conveniently located parcel of upland,
and the two be utilized together. The owner of the one would
find it convenient and desirable to own the other, but he would
not desire to own any part of the upland unless he could also
own some convenient part of the bottom land. The purchaser,

J. I. Triplett, having at the sale first bought a parcel of the lowland, was thereby induced and willing to buy upland that could be advantageously used along with it. The latter, without the bottom land, he did not want, and would not have given as much for it as he bid, if, indeed, he had bid for it at all. The upset bids were made on only a part of his purchases, and one of them so circumscribed that, if accepted, he could not bid on the parcels as at the last sale. It was an offer of an advance of seven and a fraction *per cent.* on a parcel of the bottom land bought by him, and upon another parcel of like land bought by another person, and made a condition that *both parcels be again offered as one tract.* The other upset bid is a small advance on one of the parcels of upland bought by Triplett. If the upset bids were accepted the effect would be to compel him to take, in any event, all the parcels of upland except one, which he would not have purchased at all if he had not first bought the parcel of bottom land, and force him to buy not only it on the resale, but also the other parcel of bottom land coupled with it as a condition of the upset bid, and incur the risk of having to pay an exorbitant price for them both. This would be eminently unfair and unjust, and a court of equity will never put a judicial purchaser in such a situation. The court, in the interest of fairness and justice, in view of all the circumstances, rightly rejected the upset bids and confirmed the sales of the land as made by the trustee and commissioners under its decree.

Judicial sales are constantly taking place, and it must continue to be so as long as there are debts to be collected, and liens to be enforced. Great care should be observed that the practice of the court in acting upon a report of sale should not be such as to deter or discourage bidders, but such as to induce possible purchasers to attend such sales, to encourage fair, open and competitive bidding in order that the highest possible price be obtained, and to inspire confidence in the stability of judicial sales. This is due not merely to the purchaser, but

also to creditors, debtors, and the owners of property which has to be sold by the court.

There were a number of other errors assigned which related to minor matters, such as the appointment of the receiver in the case, and the settlement of his accounts. Due notice was given for his appointment and no objection made, and, as respects his accounts, it is sufficient to say, without particularizing, that no error appears in the action of the court.

The decrees appealed from must be affirmed.

*Affirmed.*