CARL H. CRISWELL et al., Appellants, v. RALPH F. CRISWELL et al., RUEL R. DODDS, Intervener, Appellees.

No. 45416.

MARCH 11, 1941.

OPINION ON REHEARING NOVEMBER 12, 1941.

REHEARING DENIED FEBRUARY 20, 1942.

Lane & Waterman, for appellants.

Jebens & Butenschoen and Hoersch & Hoersch, for appellees.

GARFIELD, J.—A rehearing having been granted on the principal question involved, the approval of the sale of the premises to Ralph F. Criswell, the opinion handed down on March 11, 1941, and reported in 296 N. W. 735, and Vol. 230, Iowa Advance Sheet, page 27, is hereby withdrawn, except Divisions II, III, and IV thereof. The petition for rehearing and the arguments on resubmission in no manner challenge said Divisions II, III, and IV, dealing with questions other than the approval of the sale of the realty and so much of the opinion of March 11, 1941, remains unchanged.

The land involved in this suit consists of two tracts, each with a set of improvements. One tract contains 65 acres and was occupied by Carl H. Criswell and wife, Elizabeth, as their home. Carl owned an undivided fourth interest in this tract. The remaining interest was owned by Ralph F. Criswell and wife, Vivian. The other tract contains 105 acres and was occupied as a home by Ralph and wife. Carl owned an undivided half interest in the 105 acres and the remaining interest was owned by Ralph and wife. In January 1937, Ralph and wife brought suit in partition for the sale of the entire 170 acres "at either public auction or private sale." Decree was entered in July 1938, appointing a referee to sell the land as an entirety at public sale. Such sale was had on January 16, 1939, and the property was bid in at $4,600 by one Wissler for Carl H. Criswell. Three days later, when the sale came before the court for approval, one Dodds, a brother of Vivian, Ralph's wife, made a written offer to the referee of $5,600 for the property. Carl H. Criswell then made a written offer to pay $5,625. The trial court approved the sale to Dodds at $5,600. From such order of approval, Carl appealed to this court. The order was reversed and the cause remanded to the district court "with full power to such court to order a resale of the property, either public or private." See 227 Iowa 212, 288 N. W. 130.

Following the remand, a second public sale was had by the referee on March 15, 1940, at which the high bidder was Carl H. Criswell with a bid of $5,800. Ralph was present at the sale and submitted the next high bid of $5,790. On March 19th the referee filed a report of sale to Carl for the $5,800. On the same day Ralph filed objections to the report, accompanied by his written offer of $5,825 for the premises. Carl filed resistance to the consideration by the court of this offer of Ralph's, principally on the grounds that Ralph had had ample opportunity to bid and that a sale to him would be inequitable and unjust. Carl's resistance was on motion stricken by the court who by order dated March 20th provided that the referee's report of sale and Ralph's bid of $5,825 would be considered by the court on March 21st at 2:30 p. m. and that all parties should have the right to make any further bid at that time, upon the same terms

previously ordered by the court and announced by the referee at the public sale on March 15th.

Pursuant to this order, Carl H. and Elizabeth Criswell, with their attorney, and Ralph F. Criswell with his attorneys, appeared in court at the time fixed. Carl's attorney orally stated: "We reserve all rights and exceptions in making any further bids," and thereupon bid $5,850. Ralph's attorney then announced a bid of $7,500. Carl's attorney advised the court that he would make no further bids. The court approved the sale for $7,500 to Ralph, who subsequently made settlement with the referee. From such approval, Carl and wife have appealed to this court.

I. Appellants contend that the sale to Ralph was in violation of the terms of the decree, which provided for a public sale. What is referred to as the sale in the courtroom is said to have been a private sale. A like contention was made by these same appellants and rejected by us upon their previous appeal. They then argued that because Wissler was the high bidder at the first auction, acceptance by the court of the subsequent increased offer of Dodds violated the provisions of the decree. We held the court was right in rejecting the high bid of Wissler and in considering the larger subsequent offer of Dodds. 227 Iowa 212, 219, 220, 288 N. W. 130, 134. Although appellants in argument concede that the opinions of this court make no distinction between public and private referees' sales in passing on the right of the court to consider higher offers, substantially the same argument is now made that was made upon the former appeal. We again hold the contention is without merit.

The statutes provide that a sale by a referee, either public or private, is subject to court approval. Sections 12344, 12345, Code, 1939. It is settled by our decisions that either a public or private sale by a referee or similar court officer is incomplete until ratified by the court; that until such time the highest bid is in reality but an offer and the person making it has no standing to demand its approval. Reece v. Cartwright, 209 Iowa 706, 708, 228 N. W. 641, 642; Harney v. Crowley, 184 Iowa 1101, 169 N. W. 370; Loyd v. Loyd, 61 Iowa 243, 16 N. W. 117. In Harney v. Crowley, at page 1103 of 184 Iowa, page 370 of 169 N. W., we say: "It [the district court] has, however, at all times, the un-

doubted power to refuse its approval of the high bid at the sale.''

Appellants also contend that in any event the trial court abused its discretion in approving the sale to Ralph. We hold that no abuse of discretion appears. Ralph's bid of $7,500 was an increase of $1,700 over the high bid of Carl at the auction. It was $2,884.21 in excess of the amount for which the land had been appraised. It is not contended that the price is inadequate. On the contrary, appellants seem to concede that $7,500 is considerably more than the land is worth. One of the primary concerns of the court in passing on judicial sales should ordinarily be to obtain the highest price that can fairly be procured. It must be remembered that Carl, as part owner, will benefit by the increased price.

Appellants argue that Ralph made such a large offer in order to keep his brother from owning the land. We do not know what Ralph's secret intentions may have been. It may be assumed, however, that ordinarily a high bidder wants to prevent the sale of the property to any competing bidder. Ralph and his wife had a somewhat larger interest than Carl. A portion of the land was their home just as another tract was the home of Carl. In the last analysis, Carl is complaining because he did not get the property. The reason he did not get it, we have a right to conclude, is that he was unwilling to pay as much as was Ralph.

In our previous opinion in this case, we say (227 Iowa 212, 221, 288 N. W. 130, 135) : ''After the bid at the public sale had been rejected, and the bidding was opened anew, the court should have continued to receive all bids offered and have accepted the last and highest bid.'' The trial court apparently attempted to comply with the above suggestion. We have held that ordinarily the discretion to reject an increased bid becomes narrower as that bid becomes larger. Harney v. Crowley, 184 Iowa 1101, 1103, 169 N. W. 370. See, too, Dyer v. Dyer, 220 Iowa 405, 262 N. W. 671. It follows that the discretion of the court to reject the high bid reported by the referee ordinarily widens as the additional bids become larger.

The order approving the sale to Ralph F. Criswell is affirmed. The other orders and judgments from which appeal has been taken are disposed of by Divisions II, III, and IV of the opinion written by MR. JUSTICE STIGER, and filed on March 11, 1941, as follows:

██ ██ II. As stated, appellant appealed from the first referee's public sale held in February 1939. Criswell v. Criswell, 227 Iowa 212, 288 N. W. 130. His motion for a stay being refused by this court, he was compelled to leave the premises on March 1, 1939.

On December 13, 1939, appellee, Ralph Criswell, filed an amendment to his petition in partition charging Carl Criswell, appellant herein, with wrongfully removing eighteen items of property from the real estate when he left the farm, alleging the real estate was damaged by removal of the various items. A trial was had on April 27, 1940. The court awarded Ralph Criswell, appellee, damages against Carl Criswell for removal of ten items in total amount of $414.55; for illustration, the court rendered judgment for $25 for damages to the real estate caused by the removal of screens and screen doors. Carl Criswell has appealed from the several judgments. The judgments appealed from must be reversed.

Appellee does not claim damages for deprivation of the use of the real estate or the items. His action is for damages to the real estate. He testified he took possession of the property on March 1, 1939. However, the trial court found in an order dated February 9, 1940, that Ruel Dodds went into possession of the premises March 1, 1939, under his referee's deed. The nature of appellee's rights in the real estate on March 1, 1939, is not disclosed and there is no showing that any rights he may have had in the real estate were infringed.

Furthermore, the several judgments cannot be upheld because it appears that some of the property appellant is accused of taking is on the farm and the remainder is owned by him personally. Another reason why the judgments cannot be sustained is that the proper measure of damages was neither alleged nor proved. Appellee, in attempting to prove damages to

the real estate, sought to introduce evidence of the value of new items to replace the old items.

In Grell v. Lumsden, 206 Iowa 166, 169, 220 N. W. 123, 125, the court states:

"If the thing destroyed or removed from real property, although a part thereof, has a value which can be accurately measured or ascertained without reference to' the soil on which it stands, the recovery is the value of the thing thus destroyed or removed, and not the difference in the value of the land. Koonz v. Hempy, 142 Iowa 337; Rowe v. Chicago & N. W. R. Co., 102 Iowa 286; McMahon v. City of Dubuque, 107 Iowa 62; Anderson v. Wilson, 142 Iowa 158; Greenfield v. Chicago & N. W. R. Co., 83 Iowa 270." The articles alleged to have been removed are within this rule. The case is reversed on this appeal.

III. Appellant filed a counterclaim against appellee for cutting 1,000 hedge posts during the period they owned the land in common. The court awarded appellant one half the value of the posts sold by appellee and one half of the posts remaining on the farm. Appellant appealed from this order. Under the circumstances shown by the record, the order was proper and is affirmed.

IV. Appellant also appealed from the allocation of costs made in the lower court in the many contested issues in the litigation. Sections 12339 and 11622, 1939 Code, read:

"12339 Costs generally. All the costs of the proceedings in partition shall be paid, in the first instance, by the plaintiffs, but eventually by all the parties in proportion to their interests, except costs which are created by contests."

"11622 Recoverable by successful party. Costs shall be recovered by the successful against the losing party."

Section 11625 reads:

"11625 Apportionment among numerous parties. In actions where there are several plaintiffs or several defendants, the costs shall be apportioned according to the several judgments rendered; and where there are several causes of action embraced

in the same petition, or several issues, the plaintiff shall recover costs upon the issues determined in his favor, and the defendant upon those determined in his favor.''

It appears that appellant has been prejudiced by the failure below to tax costs in several of the contests in harmony with these sections. The costs below should be retaxed in compliance therewith. Three fourths of the costs on appeal are taxed to appellee and one fourth to appellant.—Reversed in part; affirmed in part; and remanded.

MILLER, C. J., and MITCHELL, BLISS, OLIVER, and HALE, JJ., concur.

STIGER, J., dissents as follows:

STIGER, J. (dissenting)—I. The first question for determination is whether the trial court erred in refusing to approve the referee's report of sale to Carl Criswell for $5,800 because of the upset bid of $25 made by Ralph Criswell. The sale to appellant as the highest bidder at the public sale was subject to approval and confirmation by the court. Sections 12344 and 12345, 1939 Code.

It is well established that in sales in partition suits or other chancery sales the sale is not final and complete until confirmed and ratified by the court and in passing on the sale the court must exercise its sound judicial discretion with due regard for the stability of judicial sales and cannot arbitrarily and without cause refuse confirmation of the sale.

In Criswell v. Criswell, 227 Iowa 212, 220, 288 N. W. 130, 134, the court, speaking through Bliss, J., states:

''We have held that the trial court has a large discretion in the approval or disapproval of the sale, but that, as in all instances where official discretion is vested, this power of the court or officer is not arbitrary, but it is a legal or judicial discretion, for which sound and proper reasons can be given.''

I am of the opinion the court abused its discretion in refusing to approve and confirm the sale of the property by the referee to appellant at public sale for the sum of $5,800. Only 90 acres of the 170 acres were capable of cultivation; the buildings were old and in poor condition. As stated, appellant's bid was $1,174 more than the appraised value and there is nothing in the record to suggest that this bid was inadequate. The record justifies the conclusion that it was more than the actual value of the land. At the first public sale, at which appellee was a bidder, the high bid was $4,600 and the upset bid was $5,600, a substantial advance bid. Criswell v. Criswell, 227 Iowa 212, 288 N. W. 130.

The public sale in this case was regular in every respect, the court rejecting the high bid solely because of the upset bid of $25 made by appellee.

For the several rules on the effect of a higher bid after property has been sold at judicial sale, see 31 Am. Jur. 452. While this court adheres to the principle that the confirmation of a sale in chancery cases is left to the court to be confirmed or not confirmed in the exercise of its legal discretion, the court in the exercise of this discretion must give due regard for the stability of judicial sales. Although there is no fixed rule as to the amount of the upset bid which will justify the court in setting aside a sale, it must be a substantial and material one and if it is only nominal it should be rejected and the sale approved. Loyd v. Loyd, 61 Iowa 243, 16 N. W. 117; Damrow v. Iowa & O. S. L. Ry., 190 Iowa 996, 181 N. W. 271; Harney v. Crowley, 184 Iowa 1101, 169 N. W. 370; 31 Am. Jur. 455, section 105. Appellee's advance bid was in a nominal amount and was not a sound, proper reason for refusing to confirm the sale to appellant.

In Moore v. Triplett, 96 Va. 603, 612, 32 S. E. 50, 52, 70 Am. St. Rep. 882, the opinion states:

"Great care should be observed that the practice of the court in acting upon a report of sale should not be such as to deter or discourage bidders, but such as to induce possible

purchasers to attend such sales, to encourage fair, open and competitive bidding in order that the highest possible price be obtained, and to inspire confidence in the stability of judicial sales."

As stated in Reece v. Cartwright, 209 Iowa 706, 708, 228 N. W. 641, 642:

"The court may not, therefore, treat the transaction as a mere farce."

The fact that the courtroom auction resulted in an increased bid of $1,700 does not, under the circumstances, deprive appellant of his right to a referee's deed as the high bidder at the public sale. The upset bid should have been rejected and the referee's report approved and the referee directed to issue a deed to the land to appellant.

Furthermore, appellee was one of the bidders at the public sale and was not entitled to submit an advance bid. 31 Am. Jur. 454, section 104; Everett v. Forst, 269 F. 867, 50 App. D. C. 215, 15 A. L. R. 789; Moore v. Triplett, 96 Va. 603, 610, 32 S. E. 50, 52, 70 Am. St. Rep. 882. In Moore v. Triplett, supra, the general rule is stated as follows:

"The main upset bid was put in by one who had an agent at the sale, who bid for him. It has been generally understood by the profession, and enforced by the courts, that one who was a bidder at the sale, by himself or by an agent, which is the same thing, or was present and had the opportunity to bid, would not, as a general rule, be permitted to put in an upset bid. He must bid at the sale in open competition with all others what he is willing to give for the property. A different rule would have a pernicious effect upon judicial sales of property."

In Everett v. Forst, 269 F. 867, 870, 50 App. D. C. 215, 218, 15 A. L. R. 789, the advance bid which induced the court to reopen the sale was in a negligible amount but a substantial increase in the original bid was finally obtained at a resale by the court. The opinion states:

"Coming to the present case, had we before us only the offer of $39,000, we would have no hesitancy in holding, in the light of the decisions above quoted, that the court below abused its discretion in reopening the sale. The increased offer was only 4 per cent. above the one made by appellant, an advance less than one-half that required by the old English rule, which has been condemned 'as tending to diminish confidence' in judicial sales. * * *

"But in this case, however, the result of the reopening of the bidding was an offer of an advance of $8,100 from one who, so far as the record discloses, had not had an opportunity to bid before. Considering, as we must, not only the question of public policy involved, but the rights of the infant, we feel that the order ratifying the sale to Tashof should be sustained."

However, in the instant case, appellee was a bidder at the original sale and the rights of infants are not involved.

In Kiebel v. Leick, 216 Ill. 474, 476, 75 N. E. 187, 188, the court states:

"On an application to vacate a judicial sale the court should also take into consideration the fact, if shown, that the parties interested are under disabilities. Adults are able to bid for themselves or have others do so, and thus protect their rights and obtain the full value of their interests in premises sold; but not so as to infants. They are by their disability prevented from protecting themselves against loss."

The setting aside of judicial sales for trivial reasons discourages bidding and undermines the stability of judicial sales which should be final and set aside with caution and for sound and substantial reasons. The court should sustain the sale of its officer unless material reasons are presented for setting it aside. As stated in Dickey v. Heron, 1 Ch. Cham., Ont., 149, a purchaser is bidding for the property and not for a chance to buy the property.

The growing practice of refusing to bid at a referee's or other judicial sale and then submitting a private upset bid to the court should be discouraged. Such a procedure seeks to deprive a purchaser of the property if the bidder making the advance bid thinks the purchase an advantageous one but leaves it to the buyer if he thinks the purchase unwise. In Whitely v. Whitely, 117 Md. 538, 544, 84 A. 68, 71, the court states:

"The Court should no more in this case, than in that supposed, depart from the policy of encouraging purchasers at judicial sales by sustaining those fairly made in all respects, and for a full price, whether at public sale, or that failing, at private sale, and by refusing to strip a purchaser of a right fairly acquired, for a full consideration, merely because one who has had his day for free competition, demands that he be given a second opportunity."

I would hold appellant, Carl Criswell, is entitled to a referee's deed to the premises pursuant to his high bid at the public sale.