ANNIE SUTTON VARNELL, Appellee, v. BESSIE LEE, Appellant; WILMER LEE et al., Appellees.

No. 46490.

1054

JUNE 6, 1944.

Kelleher & Kelleher, of Fort Dodge, for appellant.

Sterling Alexander, of Webster City, for L. M. Rogers and Ada E. Rogers, appellees.

Doran, Doran & Doran, of Boone, for George Alexander and W. A. Miller, Referees, appellees.

F. J. Lund and Burnstedt & Hemingway, all of Webster City, for all other appellees.

BLISS, J.—The decree in the partition suit, entered April 26, 1943, established the title and the interests of the various owners in a farm of 188.98 acres in Hamilton county, and a residence property, not connected with the farm, in Webster City. The plaintiff, Annie Varnell, and Bessie Lee each own an undivided one third of 120 acres of the farm, and Leroy and Floyd Boynton each own an undivided one sixth of the 120 acres. In the remaining acreage of the farm, Annie Varnell and Bessie Lee each own an undivided one fourth; Leroy Boynton, Floyd Boyn-

ton, Marion Hollis, and Dwight Hollis each own an undivided one eighth. Referees were appointed by the decree to sell the land at either public or private sale, but if the latter, it was to be at not less than the appraised value. The decree directed the town property and the farm to be appraised separately, and the 120 acres and the 69 acres to be appraised separately. The entire farm was appraised as a whole at $23,500, or approximately $125 an acre, and the town property at $3,500. The 120-acre tract by itself was appraised at $14,140, and the smaller tract with the town property was appraised at $10,600. These appraisals were made on May 24, 1943, and were of the land only, without crops. The town property is not involved in this appeal. It was sold for cash, prior to the sale in question. There is no evidence that the farm which the decree directed to be appraised in two separate tracts was ever offered for sale in that manner. According to the referees there were a number of prospective buyers but they were chary about making offers. On July 9, 1943, they made a written contract, subject to the court's approval, with the appellee, L. M. Rogers, for the sale of the whole farm, including the 1943 crop, for $115, which was approximately $10 an acre under the en masse appraisal. After consultation with Mr. Lund, attorney of record for plaintiff in the partition action, and who testified that he represented the Hollis boys in the proceedings before us, it was decided by the referees that it might be advisable to offer the property for sale in court. They accordingly prepared a "Referees' Report of Sale of Real Estate," which stated that after diligent efforts the best offer made was by Rogers for $1,767.30 less than the appraised value. The report also stated:

"Your applicants further report that there are a number of prospective buyers, but they verily believe that such buyers are withholding their maximum bid and that such prospects will likely not disclose such maximum bid unless a limitation, or so called dead line, is fixed in which to make the same. Your applicants believe that competitive bidding upon said land held publicly would bring forth a higher price. * * * In order to bring this matter before the court, your applicants have entered into a tentative contract with the said L. M. Rogers for the sale of said real estate for the sum of $21,732.70, together with crops

thereon grown during the year 1943, etc., and have made the same subject to the approval of this court. Your applicants believe, as heretofore stated, that by fixing a time and place of hearing on said sale and giving others an opportunity to bid upon said premises under a certain period before said hearing is heard will result in a higher price and will probably bring out the true value of said premises.''

The application also stated that a copy of the Rogers contract was attached,. and asked the court to fix the time and place for hearing on the application, and that the applicants be permitted to give notice and advertise the premises for sale, including proper display ads and bills, and, ''That the Court approve such sale or make such orders as may be necessary to protect the right and interest of the owners and interested parties in said real estate.''

The copy of the Rogers contract attached to the report named the purchase price, ''payable $1,000 on execution of this agreement; the balance, to-wit: Upon approval of contract and delivery of deed.'' It recited that the purchaser would take subject to a lease expiring March 1, 1944, and would receive the landlord's share of the rentals. It said nothing about the nature of the deed or an abstract of title.

On July 14, 1943, during a hearing before Judge Peisen, in the Nellie Hollis estate, of which this farm was not a part, at which Mr. Lund was appearing, and also Mr. Burnstedt and Judge Henderson and the appellant were present, Lund presented the application in this matter, stating that the land had been sold privately for less than the appraised value. The judge then told him that the referees had no authority to sell privately at less than the appraisal and that the court could not approve such a sale. According to his testimony, Lund then turned to Burnstedt and Henderson and said: ''Gentlemen, can't we arrange for this public sale?'' He briefly told the court the thought of the referees as stated in the application. Judge Henderson had represented Bessie Lee as a proponent in the Nellie Hollis will contest, In re Estate of Hollis, 234 Iowa 761, 12 N. W. 2d 576, because Mr. Burnstedt, who attended to the business of Frank and Nellie Hollis, was a witness. Mrs. Lee had been very sick after the will contest and had had an operation

at the Mayo Clinic, and had left her bed to attend the Hollis hearing, over the protest of her doctor. Of the occurrence in the courtroom, Judge Henderson testified:

"Mrs. Lee was in the court room at that time. She was sick, had just returned from Rochester, and I took the liberty to speak up that she was willing to abide by the order and I sort of felt that I had sufficient authority from the two boys in California [Boyntons] to speak for them, that we all wanted it sold, I think, and Mr. Lund said something about the original contract was for $115.00 an acre, I think, but he thought on a public sale in court it would go up to one hundred twenty-five dollars an acre, which I knew would be satisfactory to Mrs. Lee and if to her, would be to the California boys, so I spoke out of turn, I admit that, merely for the purpose of binding them to that order of Judge Peisen, which I suggest you abate * * *. * * * All I can say is I had no idea the crops were to go with that farm. Whatever connection I had with it, I don't care what they lay up to me—I didn't know it and I am sure Mrs. Lee didn't know it and I am sure the gentlemen in California didn't know it, that is all I can say. Mrs. Lee was very much opposed to the sale at one hundred fifteen dollars an acre for the real estate alone, so much so that there was just a little talk that if it was to go at that price she would bid on it herself * * *."

Judge Henderson nor Mr. Burnstedt nor Mrs. Lee saw the application at the hearing. While it was filed that day, this was done apparently after the hearing. Each of these three testified that no mention that the crops were being sold was made by Mr. Lund, and each testified that he had no knowledge of that fact. Mr. Lund testified that he thought he read the report at the hearing but maybe he was mistaken, maybe he did not. At the hearing on July 14th, Judge Peisen took the order from Mr. Lund and interlined with a pen: "All parties interested appearing by their attorneys and consenting to the order hereinafter made." The order provided for a hearing on the application "for the approval of said proposed contract of sale" at the courthouse in Webster City at 10 o'clock a.m., August 3, 1943, and that the referees should give notice of the time and place by at least one publication in the Webster City daily news-

paper, and by other ads and notices of said sale, "which notice shall give opportunity to any interested person to make higher bids on said premises than that contained in the offer of the said proposed buyer, L. M. Rogers, and * * * that public bids will be received at the time of said hearing, and that said premises will be sold to the highest bidder at said time, unless otherwise ordered by the court." The court reserved the right to reject any and all bids.

The official newspaper notice of the referees stated that a report of the sale of the 189-acre Frank Hollis farm for $21,-732.70 had been filed with the clerk of the court, and they "have asked the court to consider said report and permit higher and additional bids to be made and to permit bidding thereon at the time of the hearing of said application * * * at the court house at Webster City, Iowa, on the 3rd day of August, 1943, at 10 o'clock a.m." The notice also stated:

"Any person interested in the purchase of said property, or wishing to make a higher bid for the same, should see one of the undersigned referees or appear at the court room * * * at the time above mentioned, when full permission will be given to any one wishing to bid and purchase said farm. The said premises will be sold to the highest and best bidder at said time and place, *but the Referees reserve the right to reject any and all bids,* and said sale must be subject to the approval of the Court." (Italics ours.)

It will be noted that no mention was made in the notice of the terms of the sale, of the amounts, or times of payment, or of the kind of deed, or of an abstract of title, or that the rent and the landlord's share of the crops for 1943 would go to the purchaser of the farm, or of the terms of the tentative Rogers contract. There was no mention that the contract was on file in the clerk of court's office. There was also a small ad or bill announcing the sale of the farm would be submitted to bidders at the time and place noted, and, "For particulars you will please see one of the undersigned" referees.

The record indicates that there was little bidding at the courthouse sale on August 3d. Judge Clock presided. A num-

ber who were reported to be prospective buyers did not bid. Mr. Rogers was there. He testified:

"Well, I might say my bid was raised—I had placed an original bid of one hundred fifteen dollars—my bid was raised to one hundred sixteen by another gentleman and I jumped the bid to one hundred twenty dollars and there were no more bids; then they waited for twenty or thirty minutes longer and kept calling for more bids and there were no more bids * * *."

He testified that there was some talk among the referees, Mr. Lund, and other attorneys whether a bid less than the appraisal might cause some legal difficulty and he asked the judge about it, and the judge told him there could be no trouble to him. Shortly thereafter the judge announced that the farm was sold to Mr. Rogers. Mr. Lund testified that the terms of the Rogers contract were announced at the sale and that the rentals would go to the purchaser. Mr. Burnstedt, by affidavit and cross-examination, stated that he came late to the sale, that he was not representing Mrs. Lee, that he knew or heard nothing about the crops being sold with the land, and that he assumed and told his tenant, who spoke of raising the $120 bid, that the sale was a March 1st settlement and of the land alone.

Mrs. Lee was sick on August 3d and did not attend the sale. Judge Henderson was out of the state on that date.

The referees reported that the land was sold at public sale to L. M. Rogers and Ada E. Rogers, the highest bidders, for $22,677.60. Judge Clock, in his order approving the sale, stated that a public sale was held and the land was struck off at public auction to L. M. Rogers and Ada E. Rogers, who made the highest bid of $120 an acre. The contract which was executed by the referees and Mr. and Mrs. Rogers provided for the payment of $1,000 on its execution and the balance of the purchase price when a court deed and an abstract of title showing good and merchantable title were delivered. It conveyed the land and the rentals.

The day following the sale Mrs. Lee protested to the referees because no notice was given that the rentals went to the purchaser, and that she could get a better bid, and that she would take action to set aside the sale. The referees and the

attorneys met in a few days and it was agreed that Mr. Burnstedt should have time to take such steps as were necessary to protect Mrs. Lee's interests.

On August 26, 1943, Bessie Lee, on behalf of herself and Leroy and Floyd Boynton, filed an application to set aside the sale and the order of approval, upon hearing, on the grounds that the sale was in fact a private sale and for less than the appraisal; that there was no notice of the pretended public sale, as required by law as it stood prior to July 4, 1943, or under Rule 289(c) of the new Rules of Civil Procedure; that the notice of the sale gave no information or notice to those interested that the lease or the rents, issues, and profits were to be included in the sale of the real estate; that the applicant and her nephews were misled as to what was being sold and had no knowledge that the 1943 rents were to go with the land; that the sale was for much less than the value of the land, and purchasers willing, able, and ready to pay a much larger amount than the offer of L. M. Rogers could be furnished. An amendment was filed on September 8, 1943, stating that the applicant on September 8, 1943, had filed with the clerk of the court a written offer to purchase all of the land alone at $125 an acre on a March 1, 1944, settlement, without the lease or the rents, and had delivered to the clerk her check for $2,000 as earnest money.

L. M. Rogers and Ada E. Rogers filed objections to the application as amended, stating that the objectors had knowledge of the application filed by the referees on July 14, 1943, and of the order of the court thereon, and of the method and manner of sale, and had consented thereto and were estopped, and the order of the court approving the public sale was conclusive upon them; that the Rogers had a vested right and the court had no jurisdiction to set aside the sale; and the offer of Bessie Lee came too late.

On September 13, 1943, H. D. Blue submitted to the court his bid for the farm at $127.50 per acre, possession March 1, 1944, $2,000 in cash with the offer, and the balance of the purchase price on delivery of deed and abstract showing merchantable title.

Hearings were had upon the application to set aside the sale and the Rogers objections thereto, before Judge Peisen on

August 31st, September 8th, and September 22, 1943, at which times evidence was introduced.

Mrs. Lee testified that she made her offer to purchase the land alone, without the rentals, in good faith, and left her check of $2,000 with the clerk as earnest money. The written offer and check were offered in evidence. Upon objection by Mr. Sterling Alexander, which he mentally intended to cover whether the check was good or not, Mr. Burnstedt offered to get cash, or a certified check, or anything they wanted. Mr. Alexander, the referee, conceded that Mrs. Lee was financially good for the amount, but that he would be satisfied with a cashier's check. Later on, saying he would take cash, Mr. Burnstedt agreed to deposit cash with the clerk. Mr. Miller, the other referee, said: "As far as this check is concerned, I can't see where it enters into the proposition whether it is good or isn't good."

On inquiry by the court each referee recommended that the Rogers offer be accepted over the Lee offer. When asked for their recommendation as to the Blue offer of $127.50 an acre without the crops, the answer of each was that the farm be sold to Doctor Rogers.

In speaking of what the 1943 rentals on this farm would be, Mr. Miller testified: "I think the ordinary farm probably farmed without any hard luck could be expected to bring in at least fifteen dollars an acre." He was an experienced farmer and businessman. Mr. Blue, another experienced farmer, said that he would consider a fair price, with the crop thrown in for 1943, would be $135 an acre. It was his judgment that it could be sold for that. Mr. Miller concedes that the appraisal made under the decree was the appraised value of the land alone. And when he and his coreferee were rejecting the offers of Mrs. Lee and Mr. Blue, in September 1943, the small grain had been harvested, and the corn and the beans were quite safely matured, and the only labor required that fall would be furnished by the tenant. There never had been any appraisal of the rentals.

On September 22, 1943, Judge Peisen made an order denying an application to set aside the sale. Mr. Blue was also permitted to withdraw his $2,000 from the clerk's office. The appeal herein was perfected on October 16, 1943.

The record discloses on the part of the referees a miscon-

ception of the official position which they occupy, and of its duties, and of their obligations and rights. This is further exemplified by the fact that within a week after Mrs. Lee perfected her appeal they attached a copy of the notice of appeal ·to an application, signed by them and presented to Judge Peisen, stating that "the rights of these referees * * * should be cared for and that your Applicants should be represented by counsel other and apart from the attorneys representing interested parties in said partition action, and they are entitled to independent counsel and representation in said appeal for the protection of their rights * * * ." They asked therein to "be * * * empowered to employ counsel to represent them throughout the appeal in this case * * * and that the expenses of such trial and of counsel in their behalf be made a charge against the funds in their hands * * *." On the day the application was presented an ex parte order was made granting the relief and authorizing the referees "to incur the necessary expense and to employ the necessary counsel for their defense."

Referees in partition suits are disinterested agents of the court, who are compensated for their services. They are not interested litigating parties. All of the owners of this farm and the purchasers at the sale—the only parties with material rights or a real interest in the proceedings below or in this court—have employed attorneys to represent them. They are the only parties interested in the outcome of the proceedings below or who should be interested in the outcome in this court.

It is the right of the owners of this property to obtain the highest price they can for it, and to ask the court to open or reopen biddings in order that it may be done. This the court did. The chief purpose of partition sales is to secure for the owners the most advantageous sale that can reasonably be obtained. Following our earlier decisions, this court, in Criswell v. Criswell, 230 Iowa 27, 31, 296 N. W. 735, 300 N. W. 533, 534, said:

"One of the primary concerns of the court in passing on judicial sales should ordinarily be to obtain the highest price that can fairly be procured."

See, also, Loyd v. Loyd, 61 Iowa 243, 244, 16 N. W. 117; Damrow v. Iowa & O. S. L. Ry., 190 Iowa 996, 1002, 1003, 181 N. W. 271; Saunders v. Stults, 189 Iowa 1090, 1096, 177 N. W. 516, 11 A.L.R. 394; Criswell v. Criswell, 227 Iowa 212, 222, 288 N. W. 130.

The appellant, by attorneys who took no part in the proceedings in the trial court, urges four propositions or errors, as grounds for a reversal, to wit: (1) The purported sale of August 3, 1943, was in fact a private sale and not a public sale, and since the selling price was less than the appraised valuation, it was contrary to the partition decree. (2) The farm was sold *en masse*. (3) If the sale on August 3d was a public auction sale, the single publication of the notice was contrary to the requirements of Rule 289(c) of the Rules of Civil Procedure; the notice was insufficient and unfair in not stating the terms of the sale, and in not informing the public or interested parties that the 1943 rentals would go to the purchaser of the land. (4) The court erred and abused its discretion in refusing to set aside the sale because it was for a wholly inadequate consideration, and was less by $4,000 than what was offered, and could have been obtained; the unfair attitude of the referees and other irregularities required the vacation of the sale.

I. Whether the sale of August 3d was a public or a private sale is a matter of much disagreement among the parties and the attorneys. It is not surprising, for because of the inconsistent and contradictory statements in the various reports, orders, notices, and other filings, some support can be found for either contention. The attorneys representing the referees in this court (Mr. Lund was their legal adviser below) vigorously contend that the sale was a private one. But their clients, the referees, in their report of the sale to the court, refer to it as a "public sale before the Court," and state that it was "struck off" to the highest bidder. In this court the attorney for the purchasers, who are coappellees of the referees, states that, "The sale as conducted was in certain respects public, in that it was advertised publicly and was open to the public for the obtaining of the highest possible bid. It was in other respects private, in that a contract was made with L. M. Rogers and reported to the court for approval." But in their resistance to appellant's appli-

1064

cation to cancel the sale, these appellees stated that their contract was approved by the court after a "public auction."

The appellant is consistent in that in the lower court and in this court she agrees with herself. She has at all times contended that the sale was not a public one. She points to some matters which are rather contrary to a public sale. The first line of the court's order of July 14th states that the matter to be heard is the application "for the approval of said proposed contract." The official notice of the sale given by the referees states that "the Referees reserve the right to reject any and all bids," notwithstanding they are subject to the approval of the court, and the court in its order reserved the same right. She contends that if it was a private sale it violated the requirement of the partition decree that the property, if sold at private sale, must be sold for not less than the appraisal; and that if it was a public sale it violated Rule 289(c), Rules of Civil Procedure, in that there was but one publication of the notice of sale ordered or made.

In view of the grounds of our decision we do not find it necessary to determine whether it was a public or private or a "combination" sale.

II. The partition decree directed that the two parts of the farm, in which the owners and the shares were different, be appraised separately, and that the town property be appraised by itself. There was a separate appraisal only as to the 120 acres. Because of the diversity of owners and interests it would be difficult to make a correct ascertainment of the amount each owner is to receive. See Criswell v. Criswell, supra, 227 Iowa 212, 288 N. W. 130. Nevertheless, there is no evidence that any attempt was made to offer or to sell the land in these two tracts. Referee Miller at one of the hearings called this matter to the attention of the court in a voluntary statement, thus:

"Even though there may be some slight objection which wasn't voiced at the time of the sale, we are facing further difficulties in this matter. The Will I believe says that part of this farm shall go to four heirs or their descendants and part go to three heirs and their descendants; probably have a nice time when it comes to dividing the proceeds of the farm, being sold as a whole."

The appellant contends that this sale en masse invalidates the sale. The only answer made to this, by the referees or the purchasers, is that this ground was not alleged in the objections of the appellant, nor raised in any way in the proceedings below, and cannot be raised for the first time on appeal. The answer is sufficient, particularly in view of our decision.

■ III. Whether the hearing of August 3d was intended to be, or was, a private or public sale, or both, or was for the approval of the Rogers contract, or to make another private sale, it must be conceded that the object sought was to get a higher or better offer and sale for the farm. That being the object, the notice of the hearing and sale should have definitely stated what was being sold and the terms of the sale. The notice should have informed the public and all persons interested, or sought to be reached, those facts which a person in the market for land would wish to know about, and in advance. The purpose was to get as many prospective buyers as reasonably possible at the sale. Every prospective buyer was entitled to the same information as Rogers had and a fair and equal opportunity to compete with him. The owners were entitled to this information and opportunity for themselves, and they were entitled to have the notice and advertisements inform the public thereof. The official notice and the other ads contained none of this information.

Referee Miller said that at the hearing and sale *"it was probably stated * * * that this lease would be assigned to the purchaser [with the rentals]."* (Italics supplied.) Referee Alexander gave no information on the matter. From all who attended, but one witness testified that this information was announced. Mr. Burnstedt, who was in and about the courtroom, said he heard no such announcement.

This is a good objection and in and of itself is ample ground for reversing. It is undisputed that the rentals were reasonably worth $15 an acre to the purchaser—the sum of $2,835. If the value was $10 an acre, it meant $1,890; and if but $5 an acre, it was $945 to the owners. Miller, in hedging from his opinion of $15 an acre, said the crops were a gamble. That is too broadly stating it in Iowa. The gamble decreases as the season advances. It is less in August and much less on September 22d.

■ IV. Appellant urges that the court erred and abused its discretion in refusing the offers to purchase of Mrs. Lee and of H. D. Blue. The argument of special advocates for the referees insists that each was but a "half hearted" offer. There is nothing in the record to sustain the statement. No one questioned the financial worth of either, or the good faith of their offers. Mrs. Lee's check for $2,000 was just as good as the $1,000 check of Rogers which the referees had held since July 9, 1943, and yet they insisted upon cash from her. Her written offer and check were filed with the clerk of the court on September 8th. The court was proceeding with the hearing on that day, and the offer should have been accepted. It was a $5 raise per acre over the Rogers offer, and in addition it saved the owners the 1943 rentals, or $15 an acre more.

Mr. Blue delivered his written offer to purchase, together with earnest money of $2,000 in currency, to the presiding judge on September 13th, during the pendency of the hearing. His offer also was on a March 1st settlement and left the 1943 rentals to the owners, which was an offer substantially $22.50 an acre better than the Rogers contract, or a sum of approximately $4,000, even after deducting the 1943 taxes.

The appellant and her co-owners were entitled to the acceptance of the offer of Mr. Blue. We find no justification for refusing either offer. The offer of Mr. Blue being the highest should have been accepted. The owners are entitled to the best offer reasonably obtainable.

■ V. The contention and argument of the referees and the purchasers is that the sale of August 3d, whether it was a public or private sale or a blend of both, was a valid sale because the appellant consented to the hearing and sale and whatever took place. The referees urge that it was a private sale and that she consented to a sale at less than the appraisal. The purchasers agree with this contention, but assert that if it was a public sale she consented to it, even though there was but one publication of the notice of the sale. The record does not establish these propositions. The record and evidence overwhelmingly establish that the appellant had no knowledge that the sale, whether public or private, was to carry to the purchaser the 1943 rentals. No witness testifies that she had this knowl-

edge. Mr. Lund, at the hasty and inopportune presentation of the application to the court in the midst of another hearing at which testimony was being taken, which appellant had to leave because of her physical weakness, said that he thought he mentioned the rentals but "maybe I am mistaken, maybe I didn't." Referee Alexander testified that after her return from Rochester and before the sale, "I did tell her I thought we could get the appraised value or more"; but he did not testify that he told her the rentals would go with the farm.

The claim that since the sale was approved by the court the appellant is conclusively bound thereby is without merit. The general rule is that a court of equity may set aside such an order, before or after confirmation, particularly where the rights of innocent third parties have not intervened, whenever it is made to appear that the order was made through fraud, mistake, inadvertence, or improvidence. See Webster v. Barnes Banking Co., 10 Cir., Utah, 113 F. 2d 1003, 1005; Magnes v. Tobias, 337 Ill. 605, 169 N. E. 741, 743; Gelfert v. National City Bank, 313 U. S. 221, 61 S. Ct. 898, 85 L. Ed. 1299, 1303, 133 A. L. R. 1467, 1470, 1471; id. 312 U. S. 674, 61 S. Ct. 734, 85 L. Ed. 1115; Butters v. Butters, 153 Mich. 153, 117 N. W. 203, 205; In re Receivership of First Tr. & Sav. Bk., 45 Mont. 89, 122 P. 561, 564-566, Ann. Cas. 1913C, 1327; 35 C. J. 95-98; 16 R. C. L 102; Criswell v. Criswell, supra, 227 Iowa 212, 288 N. W. 130; id. 230 Iowa 27, 296 N. W. 735, 300 N. W. 533.

The judgment and decree is therefore reversed and remanded for further proceedings in conformity to the law and the decree, with directions to reappraise the land, both as a whole and in separate tracts, as designated herein, and to offer the same separately and as a whole, to the end that the property may be sold at the highest price and best terms reasonably obtainable, to a responsible bidder, and so that the share of each owner may be accurately ascertained. If sold at public sale proper and legal notice is to be given.—Reversed and remanded.

All JUSTICES concur.